In re **AMPICILLIN ANTITRUST LITIGATION.**

**M.D.L. No. 50.**

**Misc. No. 45–70.**

United States District Court, District of Columbia.

May 9, 1972.

Richard H. Stern, Thomas H. Liddle, Dept. of Justice, Washington, D. C., for the United States.

David I. Shapiro, James vanR. Springer, Dickstein, Shapiro & Galligan, Washington, D. C., for plaintiffs States of Alabama, Florida, Louisiana, Massachusetts, Mississippi, Missouri, Nevada, North Dakota, Texas, Vermont, Virginia; Cities of New York and Memphis; Curators of the University of Missouri; and Biocraft Laboratories.

Lee A. Freeman, Lee A. Freeman, Jr., John J. Voortman, Freeman, Freeman & Salzman, Chicago, Ill., for plaintiffs States of Illinois, Indiana, Pennsylvania, and West Virginia.

Mark I. Harrison, Harrison, Strick, Myers & Singer, Phoenix, Ariz., for plaintiff State of Arizona.

Evelle J. Younger, Atty. Gen., Ellen B. Friedman, Deputy Atty. Gen., Los Angeles, Cal., for plaintiff State of California.

Perry Goldberg, Granvil I. Specks, Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., for plaintiff States of Connecticut and New Mexico.

Arthur K. Bolton, Atty. Gen., Timothy J. Sweeney, Asst. Atty. Gen., Atlanta, Ga., for plaintiff State of Georgia.

Richard C. Turner, Atty. Gen., Des Moines, Iowa, for plaintiff State of Iowa.

Wesley A. Weathers, Crane, Martin, Claussen & Hamilton, Topeka, Kan., for plaintiff State of Kansas.

Douglas M. Head, Atty. Gen., St. Paul, Minn., for plaintiff State of Minnesota.

William J. Brown, Atty. Gen., Donald Weckstein, Asst. Atty. Gen., Columbus, Ohio, for plaintiff State of Ohio.

Louis J. Lefkowitz, Atty. Gen., John M. Desiderio, Asst. Atty. Gen., New York City, for plaintiff State of New York.

Luis A. Michelli, Asst. Director, Office of Monopolistic Affairs, San Juan, Puerto Rico. Robert E. Sher, Abraham J. Harris, Sher & Harris, Washington, D. C., for Commonwealth of Puerto Rico.

David Berger, H. Laddie Montague, Jr., Philadelphia, Pa., for plaintiffs City of Philadelphia, et al. and Holy Redeemer Hospital.

Abraham L. Pomerantz, Pomerantz, Levy Haudek & Block, New York City, for plaintiff Richard Estey d/b/a Rex Pharmacy.

Eugene T. Sherman, Philip J. Simon, Chicago, Ill., for plaintiffs Albert H. Kayne and John Menees.

George Miron, Wyman, Bautzer, Finell, Rothman & Kuchel, Washington, D. C., for plaintiffs City & County of San Francisco and Maricopa County, Arizona.

Donald B. Brown, Brown & Wasserman, Los Angeles, Cal., for plaintiff Mario de Modena, et al.

Fredric B. Burns, Sager & Burns, Miami, Fla., for plaintiffs Lee's Prescription Shops and Hospital Development Corp.

Edward A. Berman, Schlifkin & Berman, Chicago, Ill., Paul L. Pascal, Anton M. Weiss, Washington, D. C., for plaintiff Mark Drugs, Inc.

Harry Rubenstein, Chicago, Ill., for plaintiff Kutza Bros. Drugs, Inc.

Seymour Kurland, Judah L. Labovitz, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for plaintiff Sol S. Turnoff Drug Distributors, Inc.

Emil Greenberg, Brooklyn, N. Y., for plaintiff Medilen Drugs, Inc.

David R. Simon, Simon & Allen, Newark, N. J., for plaintiff (on the counterclaim) Zenith Laboratories, Inc.

Jerome G. Shapiro, Hughes, Hubbard & Reed, New York City, Joseph A. Fanelli, Corcoran, Foley, Youngman & Rowe, Washington, D. C., for defendant Bristol-Myers Co.

Robert F. Dobbin, Shearman & Sterling, New York City, Richard A. Whiting, Steptoe & Johnson, Washington, D. C., for defendants Beecham Group Limited and Beecham, Inc.

## OPINION

SIRICA, Chief Judge.

This litigation currently comprises forty-six actions, either filed in this district or transferred here for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. These suits seek damages[1] and, in some instances, various types of equitable relief from the defendants, Bristol-Myers Company, Beecham Group Limited and Beecham, Inc., for alleged violations of the Antitrust Laws with respect to ampicillin and other semisynthetic penicillin drugs. Specifically, plaintiffs claim defendants have fraudulently procured and enforced the ampicillin patent and have engaged in a conspiracy to restrain and monopolize trade in ampicillin and other semisynthetic penicillins with resultant overcharges to the plaintiffs.[2] Forty of these actions urge the establishment of class actions by the Court pursuant to Fed.R.Civ.P. 23.[3] This issue has been fully briefed and argued at length by the

---

[1]. Private plaintiffs, including states and their governmental entities, cities, hospitals and similar institutions, druggists, competitors and individual consumers, are claiming treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15 (1964). The United States, also a principal party in the litigation, is suing for single, actual damages under Section 4A of the Clayton Act, 15 U.S.C. § 15a (1964).

[2]. These alleged violations arise under Sections 1 and 2 of the Sherman Act, 15 U. S.C. §§ 1-2 (1964). Certain plaintiffs have filed motions, presently pending before the Court, to amend their complaints to add claims that defendants *attempted* to monopolize trade as well as claims that defendants acquired assets in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18 (1964).

[3]. Complaints in the cases filed by the United States, Biocraft Laboratories, the City and County of San Francisco, Maricopa County, and the Curators of the University of Missouri, and in the action by Beecham Group Limited against Zenith Laboratories, do not contain class action allegations.

excellent counsel involved in these cases.[4]

In the following analysis and treatment of the proposed classes in light of the prerequisites to maintenance of class actions set out in Rule 23, the Court expresses no opinion on the merits of any of these actions, or on the claims with respect to liability or damages of any of the parties. The class action determination is viewed herein as a procedural ruling which ought to be made in the interest of defining the potential scope of the litigation as a whole and permitting these pretrial proceedings to go forward with more certainty on the part of Court and counsel. The merits of the claims of any party or class will be left to subsequent discovery and proof on the merits. Furthermore, the Court expressly reserves the right under Rule 23(c) (1) to alter or amend its decision concerning the proposed classes in light of unanticipated developments during the course of these proceedings.

For the purposes of their consideration under Rule 23, the proposed classes may be grouped in three categories:

I. Government entities and consumers.

II. Non-government hospitals and institutions.

III. Wholesale and retail druggists.

## I. GOVERNMENT ENTITIES AND CONSUMERS

Twenty-five states[5] and Puerto Rico have brought suits in which each state seeks to represent the class of public entities, consisting of the state, cities, counties, and other political subdivisions, including hospital districts, as well as the class of citizen consumers resident within its jurisdiction.

Similarly, each of two city plaintiffs[6] seeks to represent a single consumer class consisting of all of its residents who have purchased the drugs in suit.

Additionally, the City of Philadelphia, joining with a state and several other cities and counties,[7] seeks in a single action to represent one nationwide class consisting of all ultimate consumers, and all states, political subdivisions and other governmental entities across the United States which have purchased or subsidized the purchase of ampicillin or other semisynthetic penicillins. The State of Illinois has moved to amend its complaint to permit it to represent subsantially the same nationwide classes of public entities and consumers, in addition to its own statewide classes. Both Philadelphia and Illinois exclude from their proposed nationwide classes the governmental entities and consumers located in states where statewide class actions by the respective attorneys general may be sustained.

Finally, two private parties[8] who bought ampicillin by prescription seek

---

4. The Bristol and Beecham defendants have taken different positions on the resolution of the class action issue. Briefly, Beecham urges that the Court should now determine nationwide classes of governmental entities, wholesalers, retailers and private hospitals, but that consumer classes should be denied, not because Rule 23 is not satisfied but because consumer claims are all without merit. Bristol, on the other hand, argues that no nationwide class is proper and that in any event each of the proposed classes lacks a sufficiently common interest to permit any class actions at all.

5. Louisiana, Vermont, Florida, Illinois, Massachusetts, Pennsylvania, Indiana, Connecticut, New Mexico, Texas, Kansas, Arizona, New York, Minnesota, Georgia, Iowa, Mississippi, Alabama, Ohio, Nevada, Virginia, North Dakota, Missouri, California and West Virginia.

6. New York City and Memphis, Tennessee.

7. The other representative plaintiffs in this action are the state of Delaware, the cities of Buffalo, N.Y. and Scranton, Pa. and the counties of Lackawanna, Allegheny, and Luzerne, Pa., and Erie, N.Y.

8. Albert H. Kayne and John R. Menees of Illinois.

together to represent a nationwide class of individual consumers of ampicillin and other semisynthetic penicillin drugs.

## A. Requirements of Rule 23(a)

The proposed class actions must first satisfy the four prerequisites of Rule 23(a).[9] It is clear that the proposed statewide and citywide classes of individual consumers encompass memberships sufficiently large so that joinder of each member is impracticable. For example, a statewide government entities class may consist of more than a hundred city, county and state entities, including city, county and state hospital and welfare districts. See, e. g., In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Government Entity Class Actions), 333 F.Supp. 267 (S.D.N.Y.1971); Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391 (S.D. Iowa 1968). Similarly, statewide and citywide classes of individual consumers may include thousands. Numerousness in the nationwide classes is beyond dispute, but the Court finds certain difficulties with regard to the representation and management of these classes which shall be discussed later in this opinion.

The Court is also satisfied that there are questions of law or fact common to the members of the proposed classes.[10] Each of the class actions alleges that the defendants' violations of Sections 1 and 2 of the Sherman Act [11] have caused the price of ampicillin and other semisynthetic penicillins to be maintained at high, arbitrary and noncompetitive levels throughout the United States, all to the injury of plaintiffs and the particular class members. The common charges of illegality include the fraudulent procurement of the ampicillin patent and anticompetitive practices in the licensing and sale of ampicillin products. With respect to the anticompetitive practices alleged, each plaintiff will have the burden of proving (1) that the defendants violated the Antitrust Laws by combining and conspiring in interstate commerce to restrain and monopolize trade in ampicillin and other semisynthetic penicillins, (2) that pursuant to such a conspiracy the defendants did restrain and monopolize trade in ampicillin and other semisynthetic penicillins, and (3) that, as a direct result thereof, the plaintiff has purchased ampicillin and other semisynthetic penicillins at prices substantially higher than otherwise would have prevailed in the absence of alleged violations. See, e. g., City of Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.N.J.1971); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa.1968); Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968). The defendants do not deny that there are common

---

9. "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ. P. 23(a).

10. In its Opinion and Order of July 22, 1970, transferring these cases to this Court for coordinated pretrial proceedings under 28 U.S.C. § 1407, the Judicial Panel found that common questions existed with respect to the cases before it:

With the same two exceptions [the United States Government action and the *Zenith Laboratories* case—neither of which is involved in the class action determination] the complaints are virtually identical and all agree and we think it manifest that *there are substantial, complex common questions of fact . . . .* In Re Ampicillin Antitrust Litigation, 315 F.Supp. 317, 318 (JPML 1970) (emphasis added).

The Court believes that these common questions are applicable to the members of the classes proposed here as well as to the separate actions themselves.

11. 15 U.S.C. §§ 1–2 (1964).

questions with regard to the existence or scope of the alleged conspiracy but defendant Bristol-Myers Company argues vigorously that the questions of liability with respect to each plaintiff are not common, but unique, and that this situation precludes the use of the class action device. This argument will be treated in the Court's consideration of the issue of predominance of common questions under Fed.R.Civ.P. 23(b) (3).

With respect to statewide classes of government entities and statewide and citywide classes of individual consumers, the Court is satisfied at this juncture in the proceedings that the claims of the representative plaintiffs are typical of the claims of the class and that the plaintiffs will fairly and adequately represent the interests of the class. In the statewide government entities class the state and the various public entities included have the same interests and burdens of proof regarding their claims:

> Since the representative parties need prove a conspiracy, its effectuation, and damages therefrom—precisely what the absentees must prove to recover—the representative claims can hardly be considered atypical. Minnesota v. United States Steel Corp., *supra* at 567.

In the statewide and citywide consumer classes it appears that the claims of the representative plaintiffs, acting through the state attorneys general and the chief law officers of the cities, are likewise typical of the claims of the class members, since, as Judge Lord noted in In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Consumer Class Actions), 333 F.Supp. 278 (S.D. N.Y.1971), at 280, these plaintiffs

> .· . . support welfare programs which reimburse welfare recipients for the purchase of prescription drugs, including [drugs] of the type involved in this litigation. Because of these reimbursements the states [and cities] stand in the shoes of a substantial number of purchasers of the drugs

in question during the relevant periods and throughout their jurisdictions.

■ Furthermore, the interests of these statewide and citywide classes will be fairly and adequately protected by the representative states and cities. The states may certainly represent their lesser governmental entities. Illinois v. Harper & Row Publishers, Inc., 301 F. Supp. 484, 487 (N.D.Ill.1969); Minnesota v. United States Steel Corp., *supra*, 44 F.R.D. at 565–566; Iowa v. Union Asphalt & Roadoils, Inc., *supra*, 281 F. Supp. at 401–402. And the Court is persuaded that the states and cities, acting through their attorneys general and chief law officers respectively, are the best representatives of the consumers residing within their jurisdictions. This Court agrees with Judge Lord that

> [I]t is difficult to imagine a better representative of the retail consumers within a state than the state's attorney general. Historically the common law powers of the attorney general include the right and duty to take actions necessary to the maintenance of the general welfare and his presence in these actions is but a modern day application of that right and duty. His representation of the class provides the class with experienced counsel possessing sufficient resources and professional assistance to meet the obligations inevitably placed on a representative party under Rule 23. In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Consumer Class Actions), *supra*, 333 F.Supp. at 280–281.

Additionally, the cities and many of the states have retained experienced and able antitrust counsel to assist them in representing the classes.

■■ With respect to the nationwide classes of government entities and consumers urged by Philadelphia and Illinois, the Court notes that these representative plaintiffs do not have the same relationship to government entities and

consumers located in other jurisdictions. Moreover, in the closely analogous *Antibiotic* cases, the national representation of government entities and consumers resulted from separate actions by the individual states. West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 721–722 (S.D.N.Y.1970); In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Government Entity Class Actions), *supra*, 333 F.Supp. at 269. Therefore, without reflecting in any unfavorable way upon the representative parties or the qualifications and broad experience of counsel in these proposed nationwide classes, this Court believes that it would be inappropriate to certify such broad classes involving thousands of government entities and millions of individual consumers of these drugs. Likewise, in the action brought by Messrs. Kayne and Menees [12] on behalf of all individual consumers in the country, the Court is not convinced that a nation full of consumers of these drugs can be more adequately represented by persons having such a relatively minor interest [13] than by states and cities in which these consumers reside. Representation by their own states and cities will provide the consumer class members with "experienced counsel possessing sufficient resources and professional assistance" to cope with the burdens and obligations imposed on a representative party by Rule 23. Consequently, the Court concludes that such representation is superior to that offered by individual consumers.

## B. Requirements of Rule 23(b) (3)

In addition to meeting the criteria of Rule 23(a), the plaintiffs must satisfy the requirement of subsection (b) (3) of the rule [14] that common questions predominate over questions affecting only individual members and that the class action is superior to other available methods of adjudication and is manageable.

As has been mentioned, there are aspects of proof regarding the existence, scope and effect of the alleged violations which are common to each plaintiff in these proceedings. However, defendant Bristol-Myers Company contends that "[n]o action herein is maintainable as a class action because the liability element of injury to business or property differs from plaintiff to plaintiff and therefore any common questions of law and fact do not 'predominate' as required by Rule 23(b) (3)." [15] Each plaintiff must show, according to Bristol, how the alleged monopolization and exclusion of manufacturing competition affected the prices which that plaintiff paid and which he claims would have been lower had the competition not been excluded.[16] Therefore, it is argued, if the alleged violations are proven, the defendants may

---

12. *See* note 8, *supra*.

13. Consumer plaintiff Kayne seeks damages for an alleged overcharge on a $12.00 purchase of ampicillin; his co-plaintiff Menees on a $6.00 purchase.

14. "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   .     .     .     .     .

   (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed.R. Civ.P. 23(b) (3).

15. Points and Authorities of Defendant Bristol-Meyers Company in Opposition to Plaintiffs' Motions on the Class Action Issue at 2.

16. *Id.* at 5.

be liable to one plaintiff but not to another depending on whether or not defendants' conduct caused him injury, and these circumstances preclude a finding that common questions of law and fact predominate.

■ The Court believes that Bristol's argument would be more properly considered during treatment of the merits of the case regarding the calculation of the amounts of damages, if any. At this preliminary juncture, it appears that the common questions of liability and the fact of damage, i. e., whether the alleged combination and conspiracy actually had the effect of generally increasing price levels throughout the market in ampicillin, are still predominant over any questions affecting only individual members of classes. Therefore, the Court concludes with the weight of authority that these common questions are appropriate for classwide resolution. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 565 (2d Cir. 1968); Minnesota v. United States Steel Corp., *supra*, 44 F.R.D. at 572; Iowa v. Union Asphalt and Roadoils, Inc., *supra*, 281 F.Supp. at 402; Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 793 (10th Cir. 1970); In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions (Government Entity Class Actions), *supra*, 333 F. Supp. at 270.

■ Defendants Beecham Group Limited and Beecham, Inc. (hereinafter "Beecham") do not contest the appropriateness of the common issues for class action adjudication, but argue vigorously that no consumer classes should be cer-

tified until the issues of "remoteness," "standing" and "passing-on" have been resolved. In short, Beecham claims that it sold no ampicillin products directly to consumers and that these ultimate purchasers are too remote in the chain of distribution [17] to be permitted to maintain a class action here. Here again, the Court views this argument as pertinent to the merits of the litigation and not necessarily an obstacle to initial establishment of consumer classes. The issues raised by Beecham will eventually have to be resolved but in the meantime the action as a whole may proceed.

■■ With regard to the superiority of these governmental entity classes and statewide and citywide consumer classes over other available means of adjudication, including joinder under Rule 20 and intervention under Rule 24, the Court believes that this litigation falls in the category of "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed.R.Civ.P. 23, Advisory Committee's Note, 39 F.R. D. 98, 102–103 (1966).

It seems apparent that unless the claims of the members of these classes can be litigated on a class basis, they cannot be feasibly litigated at all. While the total alleged injury to the class is large, many individual class members may not have a large enough stake to justify litigating their individual claims.

---

17. Beecham distributed ampicillin through direct sales to governmental entities, non-governmental hospitals, wholesalers and for a limited time, to retailers. In addition, Beecham sold ampicillin to other pharmaceutical manufacturers which in turn distributed it in similar ways. Thus, at all times, ultimate consumers were at least two steps * removed from Beecham in the chain of distribution and, in some cases, as far removed as four steps.**

* I. e., when a defendant manufacturer sells to a retailer who sells to an ultimate consumer.

** I. e., when a defendant manufacturer sells to a non-defendant manufacturer who sells to a wholesaler who sells to a retailer who then sells to an ultimate consumer. Memorandum of the Defendants Beecham in Response to Plaintiffs' Motions for Orders Determining That These Actions Be Maintained As Class Actions at 2.

With respect to the manageability of these class claims, the Court has already alluded to the *Antibiotic* cases in which classes of governmental entities and consumers were upheld and managed state by state. West Virginia v. Chas. Pfizer & Co., *supra*; In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, *supra*. Management of these statewide and citywide classes will undoubtedly be a difficult undertaking, formidable but not beyond control. The experience gained in the administration of the *Antibiotic* cases can be of great help in these circumstances. The "track record" in those cases indicates that statewide governmental entity and consumer class actions can be brought within reasonable managerial control. And, given the cumbersome alternatives to the class action device, the Court agrees that "difficulties in management are of significance only if they make the class action a *less* 'fair and efficient' method of adjudication than other available techniques." In Re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, *supra*, 333 F.Supp. at 282.

■ In this regard, the proposed nationwide governmental entity and consumer classes stand differently. As previously indicated, the representatives do not have the same official relationship to the absentee class members as exists in the statewide and citywide class actions. Moreover, the appropriateness of having certain states and cities represent entities and consumers located outside as well as within their jurisdictions, while other states and cities are limited to representing those entities and consumers within their territories, is not altogether clear. And the superiority of state and city representation of individual consumers over representation by private parties has already been discussed. The sheer weight of numbers in

these particular nationwide classes and the enormous burdens placed upon the representative parties are significant if not critical factors in determining the manageability of such classes. In consideration of the thousands of government entities and millions of consumers in those states which have not become parties of record to this litigation, the absence of formal participation by state and local governments, the responsibilities of representation and communication placed upon would-be representatives of these classes, and the duties of supervision of these proceedings incumbent upon this Court, it does not appear prudent at this time or in keeping with the intendment of Rule 23 to certify such broad classes of this particular type.

## II. NON-GOVERNMENT HOSPITALS AND INSTITUTIONS

Two actions have been brought on behalf of nationwide classes of private hospitals. One seeks to represent a class consisting of all non-government hospitals throughout the United States and its territories who have purchased ampicillin and other semisynthetic penicillins from the defendants.[18] The other proposes a class of all Catholic affiliated and/or sponsored institutions, including but not limited to hospitals, nursing homes, rest homes, old age homes, missionaries, health care centers, schools and other institutions and entities situated throughout the United States which have been damaged by the alleged violations.[19] Because their positions are quite similar with respect to the class action issue, they may be treated together.

### A. *Prerequisites of Rule 23*

■ After careful consideration the Court is satisfied that these proposed nationwide classes of private hospitals

---

18. Hospital Development and Service Corp., et al. v. Bristol-Myers Co., et al., Civil No. 2453-70 (D.D.C.)—prior to transfer, Civil No. 70-749 (S.D.Fla.).

19. Holy Redeemer Hospital v. Bristol-Myers Co., et al., Civil No. 338-71 (D. D.C.).

and institutions meet the criteria of Rule 23, subdivisions (a) and (b) (3).[20] To the extent there is an overlap of the private hospital class on the Catholic institutions class, the latter may be considered a viable sub-class or separate class.

Numerousness in these classes is not disputed. The private hospital class consists of approximately 5,150 members which have been previously identified in the *Antibiotic* cases. Hartford Hospital v. Chas. Pfizer & Co., 52 F.R.D. 131, 136 (S.D.N.Y.1971). And the Catholic institutions class includes over 1500 hospitals or sanitoria, orphanages and infant asylums, homes for the aged and similar institutions.[21] Common questions of law and fact regarding the existence, scope and effect of the alleged anticompetitive activities exist with respect to these actions just as they do for other classes of plaintiffs in this litigation. The hospital plaintiffs' claims are typical of and not antagonistic to the claims of other private hospitals and institutions belonging to the class so that it may reasonably be expected that the classes as a whole will be fairly and adequately represented. In addition, both the private hospitals and Catholic institutions classes have able and experienced antitrust counsel.

The Court is also convinced that common questions predominate in these cases, despite the emphasis placed by defendant Bristol upon an individual liability-damage issue. The claims of private hospitals and institutions, like those of other plaintiffs in these cases, have a "common nucleus of operative facts even though there may be lacking complete identity." Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D. Cal.1967). Allegations of patent fraud and the existence of a conspiratorial agreement among the defendants to lessen competition in and exclude competitors from the manufacture and sale of ampicillin and other semisynthetic penicillins, and to secure power over the price of these drugs, as well as the activities which carried out the alleged agreement and resulted in damage to the plaintiffs, are common items of proof which predominate over issues of damages peculiar to each claimant. Likewise, the class action form of litigation of these claims is superior to alternative methods of adjudication. Although a given institution could conceivably have a claim substantial enough to warrant a separate action, the relatively small claims in many cases might render litigation impracticable. The economies of time and judicial energy and the avoidance of repetitious litigation which the class action affords, together with the reasonable size of these classes, leads the Court to conclude that these class actions are the best available methods of litigating these claims and are well within the realm of manageability.

## III. WHOLESALE AND RETAIL DRUGGISTS

Eight actions have been brought on behalf of wholesale and/or retail druggists.[22] Seven of the actions urge the

---

20. *See* notes 9 and 14, *supra*.

21. Brief of Plaintiffs City of Philadelphia, Et Al. and Holy Redeemer Hospital in Support of Their Respective Actions Being Maintained as National Class Actions at 6.

22. The druggist actions are: Estey v. Bristol-Myers Co., et al., Civil No. 1159–70 (D.D.C.); Lee's Prescription Shops, Inc. v. Bristol-Myers Co., et al., Civil No. 2452–70 (D.D.C.)—prior to transfer Civil No. 70–748–Civ–CF (S.D.Fla); Mark

Drugs, Inc. v. Bristol-Myers Co., et al., Civil No. 2544–70 (D.D.C.)—prior to transfer Civil No. 70C 1742 (N.D.Ill.); Kutza Bros. Drugs, Inc. v. Bristol-Myers Co., et al., Civil No. 3355–70 (D.D.C.)— prior to transfer Civil No. 70C 2247 (N.D.Ill.); Turnoff Drug Distributors, Inc. v. Bristol-Myers Co., et al., Civil No. 3559–70 (D.D.C.)—prior to transfer Civil No. 70–2702 (E.D.Pa.); Turnoff Drug Distributors, Inc. v. Beecham Group Ltd., Civil No. 44–71 (D.D.C)—prior to transfer Civil No. 1537–70 (D.N.J.); Medilen

establishment of nationwide classes of druggists; one action is brought on behalf of the retail druggists in two states.[23]

Counsel for the United States have filed a memorandum in opposition to the certification of wholesaler and retailer druggist classes. The Government's position is a response to the opposition of certain druggists to the formation of any consumer classes for reasons of remoteness and lack of standing to sue. Since druggists who have sold to welfare recipients have been reimbursed by states who have been funded in turn by the Federal Government under various welfare programs, these druggists should not be permitted to maintain class actions, so the Government argument goes, until the Court has had an opportunity to determine the "passing-on" issue and the validity of their claims for relief. In the event the Court should certify the druggist or other classes, the Government asks the Court to carve out its single damage claim for overcharges included in payments to the States for welfare recipient costs.

As indicated by the Court at the outset, questions on the merits or validity of certain claims will be better deferred pending the development of a fuller factual background. Again, the determination herein of the propriety of certain classes in no way indicates or presages a decision on the merits of any of these substantive questions. See Miller v. Mackey Int'l, Inc., 452 F.2d 424, 427 (5th Cir. 1971); Kahan v. Rosenstiel, 424 F. 2d 161, 169 (3d Cir. 1970). Moreover, it does not seem necessary to the Court at this point to require that the claims of different classes be in harmony with each other but only that the classes themselves satisfy the prerequisites of Rule 23.

### A. Requirements of Rule 23

■ After examination of the classes proposed by the druggist plaintiffs, the Court is satisfied that the criteria of Rule 23 are met and that a single nationwide wholesaler-retailer class is appropriate for certification at this time. Toward this end, it is the opinion of the Court that the druggist actions are sufficiently similar so that they should be consolidated into one nationwide class with a committee of counsel formed by the attorneys of record in these cases.

The requirements of numerousness in this class is plainly satisfied. The same class has already been utilized in the settling *Antibiotic* cases. West Virginia v. Chas. Pfizer & Co., *supra.* In those cases, approximately 51,016 retailers and 732 wholesalers were identified, making a total class membership of 51,748. The same common issues of fact and law with respect to the allegations of patent fraud and anticompetitive arrangements exist and predominate in these druggist actions as they do in the governmental entity, consumer and hospital classes treated earlier. The Court reiterates its opinion that differences in particular possible damages do not prevent compliance with Rule 23. Also, for the purposes of initial class determination, the Court believes that the claims of the class representatives are typical of those of absent class members and that adequate representation will be provided. Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 562; Philadelphia Electric Co. v. Anaconda American Brass Co., *supra*, 43 F.R.D. at 463; Siegel v. Chicken Delight, Inc., *supra*, 271 F.Supp. at 728;

Drug, Inc. v. Bristol-Myers, et al., Civil No. 776–71 (D.D.C.)—prior to transfer Civil No. 70 CIV 4139 (S.D.N.Y.); Mario De Modena v. Bristol-Myers Co., et al., Civil No. 43–72 (D.D.C.).

23. In Mario De Modena v. Bristol-Myers Co., et al., Civil No. 43–72 (D.D.C.), an individual owner-proprietor and several corporate retailers have brought a single action on behalf of all retailers in California and Arizona that purchased and sold at retail ampicillin and other semisynthetic penicillins during the period in suit.

Minnesota v. United States Steel Corp., *supra*, 44 F.R.D. at 566. The compatibility of interest of all class members in the subject matter of this litigation poses no problem. If, however, at a later date conflicts materialize between the wholesaler and retailer groups, appropriate subclasses may be created under Rule 23(c) (4). And it is apparent to the Court that counsel in the druggist classes have the broad range of experience necessary to ably represent the class. Finally, the Court is satisfied that a nationwide class action is the best means available for handling these claims although the numbers involved in so large a class approach the brink of unmanageability. It is hoped, however, that the experience and procedures developed in the settling *Antibiotic* cases will enable the administration of this class to go forward smoothly with little wasted motion by the Court and counsel.

## IV.  NOTICE TO THE CLASSES

Rule 23(c) (2) requires the Court to direct to the members of the class the best practicable notice.[24] It is evident that the different composition of the various classes established herein will involve resolution of the notice question on a class by class basis to insure the best possible notification and adherence to standards of due process. It is also important to note that a memorandum directed to all federal courts by the Administrative Office of the United States Courts indicates that government franking privileges will no longer be available for purposes of notice in class actions. Therefore, no notice will be sent to the classes until further order of the Court and decision on the question of the manner, form and timing of notice will be deferred until briefs have been submitted in accordance with the schedule set by the Court in the accompanying order.

## PRETRIAL ORDER NO. 5

### DETERMINING THAT CERTAIN ACTIONS ARE TO BE MAINTAINED AS CLASS ACTIONS

The plaintiffs in many of the cases in the above litigation have requested that class actions proposed by them be certified by this Court under Fed.R.Civ.P. 23. Upon consideration of the memoranda and authorities submitted by counsel for plaintiffs and defendants on this issue, as well as the oral arguments made at the hearing in connection therewith, the Court concludes, for reasons set forth in its opinion of this date, that:

(1) the members of the classes certified below are so numerous that joinder of all members of each such class in a single action is impracticable;

(2) there are questions of law or fact common within each such class;

(3) the claims or defenses of the representative parties of each such class are typical of the claims or defenses of the members of that class;

(4) the representative parties of each such class will fairly and adequately protect the interests of that class;

(5) the questions of law or fact common to the members of each such class predominate over any questions affecting only individual members of that class; and that

(6) these class actions are superior to other available methods for the fair and efficient adjudication of the controversies. In reaching this conclusion with respect to the classes certified below, the

24. "In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel." Fed.R.Civ.P. 23(c) (2).

Court considered, *inter alia*, (A) the interest of members of each such class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of each such class; (C) the desirability or undesirability of concentrating the litigation of these claims in this particular forum; and (D) the difficulties likely to be encountered in the management of each such class action.

Now, therefore, it is by the Court this 9th day of May, 1972, ordered as follows:

1. Each of the actions brought by a state plaintiff (including the action brought by the Commonwealth of Puerto Rico) for itself and as representative party for the class of the state (commonwealth) and all its cities, counties, and other political subdivisions, including hospital districts, and for the class of all its citizens who have purchased the drugs in suit, is to be maintained as a class action under Fed.R.Civ.P. 23.

2. Each of the actions brought by a city plaintiff for itself and as representative party for the class of all of its residents who have purchased the drugs in suit is to be maintained as a class action under Fed.R.Civ.P. 23.

3. Each of the actions brought by a private hospital plaintiff for itself and as representative party for the class of all non-government hospitals, or for the class of all Catholic affiliated and/or sponsored institutions, throughout the United States and its territories is to be maintained as a class action under Fed.R.Civ.P. 23.

4. The actions brought by wholesale and/or retail druggists on behalf of themselves and as representative parties for the class of all wholesale and/or retail druggists in the United States, or in particular states only, are hereby consolidated for the purposes of these proceedings and are to be maintained as a single national class action under Fed.R.Civ.P. 23. The counsel of record in these cases are hereby designated as a committee of counsel for this class.

5. The class actions proposed by states, cities or counties on behalf of government entities or consumers including government entities and consumers located beyond the governmental jurisdiction of said states, cities or counties are not certified as class actions and these proposed classes are disallowed for the reasons set forth in the Court's opinion of this date.

6. The class action proposed by individual consumer plaintiffs Kayne and Menees for themselves and as representative parties for a national class of all consumers of the drugs in suit is not certified as a class action and the proposed class is disallowed for the reasons set forth in the Court's opinion of this date.

7. No notice is to be communicated to the members of the classes certified by the Court until further order of the Court.

8. The representative plaintiffs in the classes certified by the Court shall serve and file within 15 days their memoranda stating their plan regarding the manner, form and timing of notice to their respective classes. Within 15 days thereafter, defendants shall serve and file their suggestions and objections, if any, with respect to plaintiffs' proposed plan for notification. Any proposed plan must satisfy the criteria for notice under Fed.R.Civ.P. 23(c) (2).

The Court specifically reserves its right under Fed.R.Civ.P. 23(c) (1) to alter, amend, supplement or vacate any part of this Order as it may deem necessary during these proceedings.