**LUMCO INDUSTRIES, INC., et al.**

v.

**JELD–WEN, INC., et al.**

**Civil Action No. 96–CV–2125.
No. 94–CV–3744.**

United States District Court,
E.D. Pennsylvania.

March 18, 1997.

Anthony J. Bolognese, Barrack, Rodos & Bacine, Philadelphia, PA, Harold E. Kohn, Kohn, Swift & Graf, P.C., Philadelphia, PA, for Lumco Industries, Inc., Dubell Lumber Company, Norwood Sash & Door Manufacturing Co., Tonka Building Supplies, Inc. in Civil Action No. 96–CV–2125.

Robert Fleishman, Washington, DC, Charles J. Bloom, Stevens & Lee, P.C., Wayne, PA, Frederick J. Horne, Steptoe and Johnson, Washington, DC, Michael K. Vaska, Foster, Pepper and Shefelman, Seattle, WA, Peter S. Ehrlichman, Foster, Pepper and Shefelman, Seattle, WA, for Jeld–Wen, Inc., Michigan Birch Door Manufacturers, Inc. in Civil Action No. 96–CV–2125.

Charles J. Bloom, Stevens & Lee, P.C., Wayne, PA, Frederick J. Horne, Steptoe and Johnson, Washington, DC, Michael K. Vaska, Foster, Pepper and Shefelman, Seattle, WA, for Young Door Co. in Civil Action No. 96–CV–2125.

Harold E. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Leonard Barrack, Steven A. Asher, Barrack, Rodos & Bacine, Philadelphia, PA, Richard A. Lockridge, Schatz Paquin Lockridge Grindal & Holstein, Minneapolis, MN, Michael J. Boni, Steven M. Steingard, Kohn, Swift & Graf, P.C., Philadelphia, PA, Richard L. Creighton, Jr., Keating, O'Gara Law Firm, Lincoln, NE, Sara Madsen, Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, for Lumco Industries, Inc. in No. 94–CV3744.

Gary M. Marek, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, Margaret M. Zwisler, Laura S. Shores, John C. Peirce, Howrey and Simon, Washington, DC, for Premdor Corporation in No. 94–CV3744.

Richard L. Bazelon, Bazelon & Less, Philadelphia, PA, Daniel A. Rezneck, Phillip Horton, Arnold and Porter, Washington, DC, for Steves & Sons, Inc. in No. 94–CV3744.

Robert Fleishman, Washington, DC, Charles J. Bloom, Stevens & Lee, P.C., Wayne, PA, Michael K. Vaska, Foster, Pepper and Shefelman, Seattle, WA, for Jeld–Wen, Inc., Michigan Birch Door Manufacturers, Inc. in No. 94–CV3744.

Robert E. Nord, Julie A. Harms, Hinshaw and Culbertson, Chicago, IL, for Illinois Flush Door, Inc. in No. 94–CV3744.

William H. Roberts, Blank, Rome, Comisky & McCauley, Philadelphia, PA, M. Stephen Pitt, Merrill S. Schell, Wyatt, Tarrant & Combs, Louisville, KY, for Ledco, Inc. in No. 94–CV3744.

Thomas C. Kilcoyne, Cohen, Todd, Kite & Stanford, Cincinnati, OH, for Adam Wholesalers Inc. in No. 94–CV3744.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This civil action arises out of an alleged conspiracy to fix prices by certain manufacturers of residential flush doors, in violation of federal antitrust laws. On October 1, 1996, Plaintiffs filed a Motion for Class Certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Defendants opposed the Motion. On February 14, 1997, the Court held a hearing on the issue. For the reasons stated below, the Court will

grant Plaintiff's Motion for Class Certification.

In 1994, the Justice Department began an investigation into alleged price-fixing activities among certain manufacturers of residential flush doors between 1990 and 1994.[1] In that same year, while the Justice Department investigation was ongoing, Plaintiffs Lumco Industries, Inc., DuBell Lumber Company, Norwood Sash & Door Manufacturing Co. and Tonka Building Supplies, Inc. (hereinafter collectively "Plaintiffs"), who were purchasers and distributors of residential doors, filed a Complaint in federal court alleging antitrust violations against five door manufacturers: Premdor Corp.; Arrow Door Co., Inc.; Illinois Flush Doors, Inc.; LEDCO, Inc. and Steves & Sons, Inc. Four of these five door manufacturers have since pleaded guilty to violations of the Sherman Act.

In March, 1996, Plaintiffs filed this Complaint against Jeld–Wen, Inc., and two of its subsidiaries, Michigan Birch Door Manufacturers, Inc. and Young Door Company (hereinafter collectively the "Jeld–Wen Defendants," or "Defendants"). In July, 1996, this Court consolidated Plaintiffs' action against the Jeld–Wen Defendants with Plaintiffs' action against Premdor, Arrow, Illinois Flush, LEDCO, and Steves & Sons.

In August, 1996, Michigan Birch Door Manufacturers, Inc. (a subsidiary acquired by Jeld–Wen, Inc. after the Justice Department had begun its investigation in 1994), pleaded guilty to a violation of Section One of the Sherman Act, 15 U.S.C. § 1, in that Michigan Birch engaged in certain price-fixing activities in 1993 involving "certain customers for residential doors, specifically Lauan Flush doors, in limited geographic areas in Northeastern and Mid–Atlantic states." After Michigan Birch Door entered its plea, the Justice Department announced that it had completed its investigation into the residential flush door industry.

On December 31, 1996, this Court approved a settlement between Plaintiffs and the original Defendants, Premdor, Arrow, Il-

linois Flush, LEDCO, and Steves & Sons (hereinafter the "Settling Defendants"). In its written opinion approving the settlement, the Court certified a Settlement Class pursuant to Fed.R.Civ.P. 23. The Settlement Class consisted of:

> All persons, firms, corporations, partnerships, groups, or other entities in the United States and its territories (excluding (a) federal, state, and local governmental entities, and (b) defendants and their parent companies, predecessors, successors, subsidiaries, affiliates and coconspirators) that purchased residential flush doors in the United States directly from any of Premdor Corporation, Steves & Sons, Inc., Illinois Flush door, Inc., Ledco, Inc., Arrow Door Co., Inc., Jeld–Wen, Inc., Michigan Birch Door Manufacturers, Inc. or Young Door Company, or their co-conspirators, or any parent, predecessor, successor, subsidiary or affiliate of any defendant or co-conspirator, at any time during the period from June 1, 1990 to December 31, 1994;

In its opinion, the Court made clear that its certification of a Settlement Class did not affect the ongoing action between Plaintiffs and the Jeld–Wen Defendants. The Court stated:

> Plaintiffs' action against these non-settling defendants remains pending in this Court, and is unaffected by the proposed settlements herein under consideration, with the sole exception that the amounts received by the Settlement Class in connection with such settlements will be deducted from any judgment that Plaintiffs may ultimately receive with respect to the Jeld–Wen litigation.

In October, 1996, Plaintiffs filed a Motion for Class Certification, requesting that this Court certify a Plaintiff Class which is identical to the Settlement Class defined above. Defendants filed a Response opposing the Motion. The parties engaged in extensive briefing, and on February 14, 1997, this Court held a hearing on the issue.

---

**1.** The residential flush doors at issue are typically produced of flat wood which can then be covered with various types of door facings. They are used primarily in basements, bedrooms and bathrooms of residences.

In opposing Plaintiffs' Motion for Class Certification, the Jeld–Wen Defendants contend that the instant action does not meet the requirements of Fed.R.Civ.P. 23. Specifically, Defendants contend that Plaintiffs have not shown, pursuant to Fed.R.Civ.P. 23(b)(3), that common questions of law and fact will predominate or that a class action is the superior method of adjudication.

Rule 23(a) of the Federal Rules of Civil Procedures provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

■ There can be no dispute that Plaintiffs have met the requirements of Fed. R.Civ.P. 23(a). First, the number of purchasers of residential doors is numerous and joinder would be impracticable. Second, the question of whether Defendants participated in a price-fixing conspiracy presents a common question of fact. Third, as purchasers and distributors of residential flush doors, the representative parties will present claims and defenses which are typical of the class. Fourth, the representative parties are represented by experienced counsel who can adequately protect the interests of the class.

Defendants contend, however, that Plaintiffs can not maintain a class action pursuant to Fed.R.Civ.P. 23(b)(3). Federal Rule 23(b)(3) provides in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ...

Defendants contend that common questions do not predominate in the instant action. Additionally, Defendants contend that a class action is not superior to other methods of adjudication, such as a test case approach.

■ In order to maintain a class action under Rule 23(b)(3), Plaintiffs must show that common or 'generalized' proof will predominate at trial with respect to each element of their claim. *See, Industrial Diamonds,* 167 F.R.D. 374, 381 (S.D.N.Y.1996); *see also, In re Domestic Air Transportation Antitrust Litigation,* 137 F.R.D. 677, 685 (N.D.Ga.1991). In order to prevail on a price-fixing conspiracy claim, Plaintiffs must prove three elements. First, Plaintiffs must prove that Defendants violated the antitrust laws. Second, Plaintiffs must prove the fact of damage, or the impact, of Defendants' unlawful activity. Third, Plaintiffs must prove the amount of damages sustained by said activity.

■ The first element of Plaintiffs' claim—whether Defendants violated the antitrust laws—depends entirely upon generalized proof. The predominant questions with respect to this element of liability will be whether a conspiracy to fix prices existed and whether the Jeld–Wen Defendants participated in that conspiracy. The fact-finder's focus of inquiry will be on the Jeld–Wen Defendants' words and actions; it will not vary among individual class members.

Several courts have held that when a defendant is alleged to have participated in a nationwide price-fixing conspiracy, impact will presumed as a matter of law, and the predominance requirement of Fed.R.Civ.P. 23(b)(3) will be satisfied. *See, e.g., In re Citric Acid Antitrust Litigation,* 1996–2 CCH Trade Cases ¶ 71,595, 1996 WL 655791 (N.D.Cal. October 2, 1996); *In re Amino Acid Lysine Antitrust Litigation,* MDL No. 1083, 1996 WL 69699 (N.D.Ill. February 15, 1996); *In re Sugar Industry Antitrust Litigation,* 1976 WL 1374, 23 (N.D.Cal.). *See also, Newberg on Class Actions,* § 18.28 at 18–98, 18–99 (3d ed.1992) (stating that "[a]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions" for the purpose of Fed. R.Civ.P. 23(b)(3)).

Defendants contend that the presumption of common impact should not apply in the instant case. Moreover, Defendants contend that the issue of impact will depend on individual factors, and will preclude the predominance of common questions at trial.

In *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977), the Third Circuit addressed the issue of impact or "fact of damage" in an antitrust class action. In *Bogosian*, the plaintiff class consisted of over 100,000 service stations lessees who filed a class action against national and regional oil companies, alleging that defendants had unlawfully tied the leasing of gas station sites to the purchase of gasoline. The District Court had denied plaintiffs' motion for class certification. The Third Circuit reversed and remanded, holding that a showing of impact in an antitrust case did not require that each class member show individual injury. The Third Circuit stated that "when an antitrust violation impacts upon a class of persons who do have standing, there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual." *Id.* at 454. The Third Circuit continued:

> If, in this case, a nationwide conspiracy is proven ... an individual plaintiff could prove fact of damage simply by proving the free market prices would be lower than the prices paid and that he made some purchases at a higher price. If the price structure in the industry is such that nationwide the conspiratorially affected prices at the wholesale level fluctuated within a range which, though different in different regions, was higher in all regions than the range which would have existed in all regions under competitive conditions, it would be clear that all members of the class suffered some damage ... Under these circumstances, proof on a common basis would be appropriate. *Id.* at 455.

In the instant case, Plaintiffs have alleged that, despite fluctuating prices in and among regions, Defendants' unlawful price-fixing caused the price of residential flush doors to be higher than they would have been absent the conspiracy. Plaintiffs are therefore alleging common impact in the manner approved by the Third Circuit in *Bogosian.*

The Jeld–Wen Defendants contend that the residential flush door market is regional, not national. According to Defendants, customers in different regions of the country prefer different types of residential doors. Defendants contend that these regional preferences, along with other factors such as high distribution costs and supply and demand variations, make it impossible for a single door manufacturer to have enough market power to impact the national market for residential doors. Therefore, Defendants contend, Plaintiffs could not show common impact, and common questions could not predominate.

The Court disagrees with Defendants' contentions regarding common impact. In this case, Plaintiffs have already shown that they plan to prove common impact by introducing generalized evidence which will not vary among individual class members. For example, Plaintiffs contend that even though prices varied in and among regions, the Jeld–Wen Defendants used price lists which set forth a base price for each door. Although the price of a door may have increased due to distribution costs, or decreased due to negotiations, Plaintiffs allege that a base price was fixed for each door, pursuant to a base price list. Plaintiffs further contend that, despite the fluctuations in pricing caused by negotiations or regional preferences or distribution costs, the price set by the price list was higher than it would have been in competitive conditions. Such allegations are of the kind contemplated by the Third Circuit in *Bogosian.*

Additionally, Plaintiffs allege that the Jeld–Wen Defendants considered themselves to be a nationwide manufacturer and distributor. Plaintiffs also allege that Defendants' participation in national trade shows and membership in national trade associations demonstrates Defendants' national market power.

The Court recognizes that Defendants dispute the veracity and/or the relevance of Plaintiffs' allegations. At this stage of litigation, however, the Court need not

174

concern itself with whether Plaintiffs can prove their allegations regarding common impact; the Court need only assure itself that Plaintiffs' attempt to prove their allegations will predominantly involve common issues of fact and law. Plaintiffs need only make a threshold showing that the element of impact will predominantly involve generalized issues of proof, rather than questions which are particular to each member of the plaintiff class. *See, In re Disposable Contact Lens Antitrust Litigation,* 170 F.R.D. 524 (M.D.Fla.1996).

■ In the instant case, Plaintiffs must prove common impact to prevail on their claim because their claim is based on an allegation of a nationwide conspiracy. In order to prove common impact, Plaintiffs must produce generalized evidence; they have demonstrated that they plan to produce such evidence. Accordingly, Plaintiffs' allegations regarding impact, like their allegations regarding conspiracy, will focus the fact-finder's inquiry on Defendants' words and actions, not on individual questions relating to particular plaintiff class members.

With respect to the third element of Plaintiffs' claim, the amount of damages, the Court recognizes that individual questions may arise. However, as the Third Circuit noted in *Bogosian,* "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian,* 561 F.2d at 456.

In the instant case, each member of the Plaintiff Class will proceed under the same theory of liability and will apply the same formula to calculate damages. In an affidavit submitted on behalf of Plaintiffs, Professor Martin A. Asher, a professor of economics who teaches at the University of Pennsylvania, proposes a method of calculating damages. Professor Asher states that the calculation of damages in this case could be calculated by determining the amount of the overcharge caused by the conspiracy, and multiplying that amount by the volume of each class member's purchase. Professor Asher suggests two methods for calculating the extent of the overcharge caused by the conspiracy. First, he suggests applying a regression analysis by comparing prices before and during the period of the allegedly conspiratorial activities. Second, he suggests applying a "yardstick" model, by comparing the residential doors industry to an industry unaffected by a price-fixing conspiracy.

Defendants criticize both of the proposed methods for calculating the amount of overcharge. With respect to the regression analysis, Defendants contend that Professor Asher does not explain how to obtain the requisite price information for each door in each region before and during the conspiracy. With respect to the yardstick model, Defendants contend that Professor Asher wrongly assumes that information regarding the aggregate market for residential doors could account for price variations caused by other factors, such as regional preferences and distribution costs.

At this point, however, Plaintiffs are not required to come forward with more specific formulas for calculating damages. Professor Asher's methodologies appear both logical and feasible. Similar methods have been proposed and accepted by courts in other class actions. *See, e.g., In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 1996–2 CCH Trade Cases ¶ 71,643 (S.D.N.Y. November 26, 1996). Although Defendants have criticized these methodologies, they have not produced specific evidence to demonstrate that such methods will not work. Courts have held that "it is incumbent upon defendants to substantiate that criticism" of proposed methodologies for calculating damages by producing "empirical evidence." *In re Domestic Air Transportation Antitrust Litigation,* 137 F.R.D. at 690. Defendants have failed to substantiate their criticisms of Plaintiffs' proposed methodologies.

Moreover, without disputing Defendants' claims regarding the complexity of the residential door industry, the Court feels compelled to note that similar complexities exist in other industries which have nevertheless been subject to class actions. Many industries are affected by regional consumer preferences, as well as distribution costs and

variations in supply and demand. The Court does not believe that an assessment of damages in the instant action would be so complex as to preclude the maintenance of a class action.

In addition to contesting the predominance of common questions, Defendants contend that Plaintiffs have not shown, as required by Fed.R.Civ.P. 23(b)(3), that a class action is superior to other methods of adjudication. Specifically, Defendants contend that a test case approach would be superior in this case.

The Court has concluded, however, that a class action would be more fair and efficient than the test case approach. Although, as Defendants have noted, certain Jeld–Wen customers who have purchased large volumes of doors may have an incentive to pursue an action against Defendants, other smaller purchasers would not have such incentive. A class action would adequately protect these smaller purchasers' interests, as well as the interests of the larger purchasers.

Moreover, the test case approach suggested by Defendants poses a risk of duplicative litigation. Defendants suggest that, with respect to common issues such as liability, courts could apply collateral estoppel to subsequent plaintiffs. However, courts are not always willing to apply this kind of nonmutual collateral estoppel, and the same issues are likely to be relitigated in subsequent cases against Defendants.

Furthermore, the Court has considered the extent to which litigation has progressed. Before arriving at a settlement with the Settling Defendants, Plaintiffs had engaged in extensive litigation regarding alleged price-fixing in the residential door industry. Plaintiffs have likely acquired some general knowledge as to the industry itself, and the trade practices of other residential door manufacturers.

Additionally, the Court notes the apparent efficacy of the class action method with respect to the Settling Defendants. Of the thousands of potential class members who received notice of the settlement, only two purchasers opted out of the Settlement Class. The Court thus believes that issues in the residential door industry can be fairly and efficiently adjudicated on a class wide basis.

In sum, the Court does not feel that the benefits of a class action are outweighed by any potential problems that could arise. Indeed, the Court does not foresee any significant problems in the management or adjudication of the instant class action. Although the adjudication of this action may require the examination of some individual facts or issues, such issues are unlikely to significantly undermine this Court's ability to manage the action.

Accordingly, the Court will grant Plaintiffs' Motion for Class Certification.