## In re VITAMINS ANTITRUST LITIGATION.

**Livengood Feeds, Inc., et al., on their own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**Merck KGAA, et al., Defendants.**

and

**Animal Science Products, Inc., et al., on their own behalf and on behalf of all others similarly situated, Plaintiffs,**

v.

**Chinook Group, Ltd., et al.  Defendants.**

No. MDL 1285
MISC. No. 99–197(TFH).

United States District Court,
District of Columbia.

Feb. 25, 2002.

---

Ann Catherine Yahner, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Jonathan David Schiller, Boies, Schiller & Flexner, LLP, Washington, DC, Steven A. Martino, Stephen L. Klimjack, Jackson, Taylor, Martino & Hedge, Mobile, AL, Jodi Trulove, Kenneth L. Adams, Elaine Metlin, Richard J. Leveridge, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, John W. Sharbrough, III, M. Stephen Dampier, P. Dean Waite, Jr., Mary Elizabeth Snow, The Sharbrough Law Firm, Mobile, AL, Roberta D. Liebenberg, Fine, Kaplan & Black, Philadelphia, PA, Bruce H. Simon, Cohen, Weiss & Simon, LLP, New York City, M. Eric Frankovitch, Frankovitch, Anetakis, Colantonio & Simon, Weirton, WV, Steven M. Recht, Recht Law Offices, Weirton, WV, Craig C. Corbitt, Jeannine M. Tsukahara, Daniel S. Mason, Joseph W. Bell, Peter F. Burns, Zelle, Hofmann, Voelbel, Mason & Gette, LLP, San Francisco, CA, Steven O. Sidener, Gold, Bennerr & Cera, LLP, San Francisco, CA, Richard Arnold Alan, Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, PA, Miami, FL, Joseph Michael Vanek, Daar, Fisher, Kanaris & Vanek, PC, Chicago, IL, C. Brooks Wood, Morrison & Heckler, LLP, Kansas City, MO, Ronert II Hueck, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Dallas D. Ball, Ballentine, DC, Carol Elder Bruce, Tighe, Patton, Armstrong & Teasdale, Washington, DC, Colin A. Underwood, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, Eric Sean Jackson, K. Craig Wildfang, Steven E. Uhr, Robins, Kaplan, Miller & Ciresi, LLP, Washington, DC, Phillip A. Cole, Lommen, Neslon, Cole & Stageberg, PA, Minneapolis, MN, Poley F. Brook, Winthrop & Weinstein, PA, Minneapolis, MN, Andrew S. Birrell, Minneapolis, MN, Kevin A. Bowman, Sebaly, Shillito & Dyer, Dayton, OH, Gordon Ball, Knoxville, TN, Bradley Stuart Lui, Morrison & Foerster, LLP, McLean, VA, Robert Kenly Webster, Washington, DC, Lawrence Byrne, Frank Panoppoulos, White & Case, New York City, Charles A. Graddick, Sims, Graddick & Dodson, PC, Mobile, AL, William James Bachman, John Edward Schimdtlein, Williams & Connolly, Washington, DC, Trawick H. Stubbs, Jr., Stubbs & Perdue, PA, New Bern, CA, Lee Allen Freeman, Freeman, Freeman & Salzman, Chicago, IL, Terri Chadick, Conner & Winters, PLLC, Fayetteville, AR, Philip Dean Bartz, McKenna, Long & Aldridge, Washington, DC, Timothy J. Becker, Zimmerman Reed, PLLP, Minneapolis, MN, Michael O. Ware, Mayer, Brown, Rowe & Maw, New York City, Bruce L. Montgomery, Arnold & Porter, Washington, DC, George T. Manning, Jones, Day, Reavis & Pogue, Atlanta, GA, Tyrone C. Fahner, Mayer, Brown & Platt, Scott William Muller, Davis, Polk & Wardwell, Washington, DC, for Plaintiffs.

Theodore V. Cacioppi, Craig M. Walker, Rogers & Wells, New York City, Fred W. Reinke, Clifford, Chance, Rogers & Wells, LLP, Washington, DC, for EM Industries, Inc.

William L. Monts, III, Hogan & Hartson, LLP, Washington, DC, Mark Riera, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, for Tanabe Seiyaku Co. Ltd.

Peter Dean Isakoff, Weil, Gotshal & Manges, LLP, Washington, DC, Aidan Synnott, Melanie H. Stein, Gregory A. Kasper, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Sumitomo Chemical Co., Ltd.

Theodore V. Cacioppi, Craig M. Walker, Rogers & Wells, New York City, Fred W. Reinke, Bret Alan Campbell, Joanne Celia Lewers, Clifford, Chance, Rogers & Wells, LLP, Washington, DC, for Merck KGAA.

## MEMORANDUM OPINION

### Re: Motions for Class Certification

THOMAS F. HOGAN, Chief Judge.

Pending before the Court are two motions for class certification: Plaintiffs' Motion for Certification of a Vitamin Products Class and Plaintiffs' Motion for Certification of a Choline Chloride Class. Upon careful consideration of Plaintiffs' Joint Memorandum of Law in Support of Plaintiffs' Motions for Class Certification ("Pls.Mem."); Defendants Merck KgaA, Merck and EM Industries, Inc.'s Memorandum of Law in Opposition to

Plaintiffs' Motion for Certification of a Bulk Vitamins Product Class ("Merck Mem."); Niacin Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Niacin Mem."); Sumitomo Chemical America Inc.'s and Tanabe U.S.A. Inc.'s Joint Memorandum of Law in Opposition to Plaintiffs' Motion for Certification of a Vitamin Products Class ("Joint Mem."); and, Certain Defendants' Memorandum in Opposition to Plaintiffs Motion for Certification of a Choline Chloride Class ("Choline Chloride Mem."); Plaintiffs' Consolidated Reply ("Pls.Reply"); Defendants Merck KgaA, Merck and EM Industries, Inc.'s Surreply ("Merck Surreply"); Niacin Defendants' Surreply ("Niacin Surreply"); Sumitomo Chemical America Inc.'s and Tanabe U.S.A. Inc.'s Surreply ("Joint Surreply");[1] the oral argument; and, the entire record herein, the Court will grant plaintiffs' Motions for Class Certification and certify the proposed Choline Chloride Class and the Vitamin Products Class.

## I. Background

The background information presented below is taken directly from plaintiffs' Second Consolidated Amended Vitamins Class Action Complaint ("Vitamins Complaint") filed on June 1, 2000 and plaintiffs' Third Consolidated Amended Choline Chloride Class Action Complaint ("Choline Chloride Complaint") filed on November 21, 2000. As such, the facts presented below are not factual findings.

Plaintiffs in this consolidated action allege that defendants participated in a massive, long-running international horizontal conspiracy to (1) raise, fix, maintain and stabilize the prices of vitamins, vitamin premixes, bulk vitamin products (A, C, E, B1, B2, B3, B5, B6, B12, H, beta carotene, astaxanthin, canthaxanthin, and/or vitamin premixes), and choline chloride,[2] and (2) allocate customers or accounts among themselves, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[3] Plaintiffs allege that defendants conspired to control the global market for vitamins, vitamins premixes and choline chloride between at least 1988 and 1998. Plaintiffs also allege that defendants avoided detection of the conspiracy, for approximately ten years, through a scheme of concealment which included: discussing and agreeing upon the prices, volume of sales, and markets in covert meetings and conversations; limiting knowledge of the conspiracy to high level personnel; deliberately refraining from creating documents; destroying records; refraining from submitting bids and submitting falsified bids; issuing agreed-upon price announcements and price quotations; formulating and rehearsing a cover story denying the vitamin cartel activity in an attempt to avoid further government investigation; and, engaging in other activities designed to keep the existence of the conspiracy hidden.

In 1998, the first class suit was filed on behalf of direct purchasers of vitamins alleging violations of antitrust laws. In 1999 the United States Department of Justice announced that several companies had pled guilty to fixing the price of certain vitamins in violation of Section 1 of the Sherman Act.[4]

---

1. Beyond the four briefs submitted in opposition to the plaintiffs' motions, the reply brief, and the three surreplies, the Court notes that parties have filed no less than eight additional submissions in support of their respective positions.

2. Choline Chloride is a B-complex vitamin and is also referred to as Vitamin B–4. *See* Choline Chloride Compl. ¶ 1.

3. Section 1 of the Sherman Act provides that "every contract, combination ... or conspiracy in restraint of trade or commerce ... is ... illegal." 15 U.S.C. § 1.

4. The following is a partial of defendants who pled guilty and the criminal fines they agreed to pay, this list is only a sample of the prosecutions by the U.S. Dept. of Justice in its investigation of the vitamins industry: F. Hoffman–LaRoche ($500 million criminal fine); F. BASF AG ($225 million criminal fine); Merck KgaA ($14 million criminal fine); Takeda Chemicals Industries, Ltd. ($72 million criminal fine); Eisai Co., Ltd. ($40 million criminal fine); Daiichi Pharmaceutical Co., Ltd. ($25 million criminal fine); Lonza AG ($10.5 million criminal fine); Degussa–Huls AG ($13 million criminal fine); Nepera, Inc. ($4 million criminal fine); Reilly Industries Inc. ($2 million criminal fine). The following corporate defendants have pled guilty or agreed to plead guilty (the amount of the fine or penalty is not known): Rhone–Poulenc and Chinook Group. In addition, many corporate executives have pled guilty or agreed to plead guilty. The penalties for individuals included prison sentences and

Many more lawsuits followed, all of which have been consolidated for pretrial purposes before this Court.

As set forth in the Class Complaints, the defendants are manufacturers of raw vitamins (synthetic and natural and in dry and oil form), vitamins premixes, bulk vitamins, and choline chloride. Defendants sell vitamins to food and pharmaceutical manufacturers for human consumption and to manufacturers of animal feed and nutrition products. Defendants also sell vitamins premixes and bulk vitamins products to manufacturers and users of animal feed and nutrition products. The vitamins manufactured by defendants are commonly used as an ingredient in the production of vitamins packaged for consumer use under major brand names.

The plaintiffs bring the action on behalf of themselves as representatives of a class of all persons or entities who directly purchased the named vitamins and choline chloride. The class of direct purchasers is composed of feed mills, premix blenders, vitamin packagers (of products for human consumption), distributors and brokers, and, in some cases, farms raising produce animals. The plaintiffs seek treble damages under the Clayton Act for the overcharges they paid as a result of the alleged antitrust violations.[5] The plaintiffs, as direct purchasers of the vitamins and vitamin products at issue, now seek

certification pursuant to the Federal Rules of Civil Procedure, Rule 23, of two classes in this litigation—a Vitamin Products Class and a Choline Chloride Class.

The plaintiffs in the Choline Chloride Complaint assert claims against twenty defendants involved in manufacturing choline chloride.[6] See Choline Chloride Compl. ¶¶ 19–38. The plaintiffs in the Vitamins Complaint assert claims against 15 defendants.[7] See Vitamins Compl. ¶¶ 28–42.

Defendants request that the Court deny the certification of the proposed classes because (1) the class representatives are inadequate; (2) common issues do not predominate over individualized issues; (3) the claims of the proposed class representatives are not typical of the claims of the proposed class members; (4) class action is not superior to other means of adjudication; (5) plaintiffs have failed to show that the representative plaintiffs will fairly and adequately protect the interests of the entire putative class; and (6) fraudulent concealment is an issue that is not susceptible to determination on a class wide basis. In the alternative, defendants request that the Court, pursuant to Fed. R.Civ.P. 23(c)(4),[8] order subclass treatment along the various product lines so as to be consistent with prior class notice and categorization by individual product line.

---

fines. Many of the defendants have settled with the class plaintiffs, see note 7.

5. Section 4 of the Clayton Act provides: "That any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States ... and shall recover threefold the damages ... the cost of the suit, including a reasonable attorney's fee." 15 U.S.C. § 15

6. Since the filing of the class complaint, class plaintiffs have dismissed certain individuals who are past or present employees of the corporate defendants including: *Lindell Hilling, John L. "Pete" Fischer, Russell Cosbourn, John Kennedy,* and *Robert Samuelson.* Choline Chloride class plaintiffs have reached settlement agreements, on behalf of a Choline Chloride Class, approved by this Court, with BASF AG (as part of a large bulk vitamins settlement), AKZO Nobel, N.V., and UCB Chemicals, and their subsidiaries and affiliates.

7. Class plaintiffs reached a settlement, approved by this Court, on behalf of a Vitamin Products Class, with seven international companies and their affiliates (nineteen firms in all) including: Hoffman–La Roche, Inc., Roche Vitamins, Inc., F Hoffman–La Roche Ltd, Rhone–Poulenc Inc., Rhone–Poulenc Animal Nutrition Inc., Rhone–Poulenc Rorer Pharmaceuticals, Inc., Rhone–Poulenc S.A., BASF Corporation, BASF AG, Hoechst Marion Roussel, S.A., Eisai Co., Ltd., Eisai U.S.A., Inc., Eisai Inc., Daiichi Pharmaceuticals Co., Ltd., Daiichi Pharmaceuticals Corporation, Daiichi Fine Chemicals, Inc., Takeda Chemical Industries, Ltd., Takeda U.S.A., Inc. and Takeda Vitamin & Food USA, Inc. Sales by these entities are believed to represent more than 90% of the total market for the affected vitamin products.

8. Fed.R.Civ.P. 23(c)(4) provides that "[w]hen appropriate ... a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

In the instant motions, plaintiffs have moved to certify the following two classes of direct purchasers:

*Vitamin Products Class.* All persons or entities who directly purchased vitamins A, C, E, B1, B2, B3, B5, B6, B12, H, beta carotene, astaxanthin, canthaxanthin, and/or vitamin premixes for delivery in the United States from any of the defendants or their co-conspirators from January 1, 1990 through September 30, 1998. Excluded from the class are all governmental entities, defendants, their co-conspirators, and all their respective subsidiaries and affiliates.

*Choline Chloride Class.* All persons or entities who directly purchased choline chloride from any defendant or their co-conspirators from January 1, 1988 through September 30, 1998. Excluded from the class are all governmental entities, defendants, and other manufacturers of vitamins, vitamin premixes and bulk vitamin products, and their respective subsidiaries and affiliates.

The plaintiffs, in their Reply brief, seek to modify the class definitions by changing the ending dates in both cases from "present" to September 30, 1998. *See* Pls. Reply, p. 3, n. 2. The Court will allow this modification in considering the motion for class certification. *See, e.g., In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 683 (N.D.Ga. 1991)("The act of redefining a class definition is a natural outcome of federal class action practice.").

## II. Standard for Class Certification and Evidentiary Burden

As the party moving for certification of the classes, the plaintiffs have the burden of establishing that each of the requirements for class certification, as set forth in Rule 23 of the Federal Rules of Civil Procedure, has been meet. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). To obtain certification under Rule 23, the proposed classes must satisfy all four prerequisites of Federal Rule of Civil Procedure 23(a) and

one of the three subsections of Rule 23(b). *See Amchem,* 521 U.S. at 614, 117 S.Ct. 2231; *Thomas v. Albright,* 139 F.3d 227, 233–234 (D.C.Cir.1998).

The four prerequisites of Rule 23(a) are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. Proc. 23(a). These four requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. Each of these requirements is addressed below.

Plaintiffs must also show that the class is maintainable under Rule 23(b). In this case, plaintiffs seek certification under Rule 23(b)(3). As such, plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). These requirements are referred to as predominance and superiority. Rule 23(b)(3) further provides that matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

In order to make the required findings of predominance and superiority to certify a class under Rule 23(b), it is necessary to identify the substantive law issues which will control the outcome of the litigation. *See State of Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir.1978). As already noted,

plaintiffs allege a price-fixing conspiracy in violation of Section 1 of the Sherman Act and seek recovery under the Clayton Act. The plaintiffs must, therefore, prove the conspiracy and establish civil liability by showing injury to business or property. *See* 15 U.S.C. §§ 1, 15. Thus, in order to prevail on an antitrust price-fixing claim, plaintiffs must prove three elements. *See, e.g., In re NAS-DAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y.1996). First, plaintiffs must prove that their was a conspiracy to fix prices in violation of the antitrust laws. *Id.* Second, plaintiffs must prove the fact of damage or the impact of defendants' unlawful activity. *Id.* Third, plaintiffs must prove the amount of damages sustained as a result of the antitrust violations. *Id.* At this stage of the litigation, however, plaintiffs need only show that the requirements of Rule 23 have been meet. *See Wagner v. Taylor* 836 F.2d 578 (D.C.Cir.1987); *Littlewolf v. Hodel,* 681 F.Supp. 929, 938 (D.D.C.1988). Specifically, under Rule 23(b), plaintiffs must show that common or general proof will predominate with respect to each of the elements of their antitrust claim, and that proceeding as a class action is superior to other available methods of adjudication.

The Court will not make a preliminary inquiry into the merits of the plaintiffs claim in determining the whether to certify the class. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974);[9] *In re Lorazepam & Clorazepate Antitrust Litigation,* 202 F.R.D. 12, 21 (D.D.C.2001); *Hodel,* 681 F.Supp. at 938. The Court will, however, "scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis." *McCarthy v. Kleindienst,* 741 F.2d 1406, 1413 (D.C.Cir.1984) (citing *Livesay,* 437 U.S. at 469 & n. 12, 98 S.Ct. 2454; *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 478 (9th Cir.1983)). The Court must accept the substantive allegations contained in the plaintiffs' complaints as true, but will consider matters beyond the pleadings to ascertain whether the asserted claims or defenses are susceptible of resolution on a class-wide basis. *See Kleindienst,* 741 F.2d at n. 8, 1419 (asserting that the trial court may consider relevant evidence which tends to support or refute the existence of a class); *see, e.g., Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656 661, n. 15 (2d Cir.1978).

This Circuit, in *Wagner v. Taylor,* further elaborated on the issue stating:

> It is readily apparent that a decision on class certification cannot be made in a vacuum. While, of course, a court does not possess "any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," [citing *Eisen* ] it is evident that some inspection of the circumstances of the case is essential to determine whether the prerequisites of Federal Civil Rule 23 have been met. Necessarily, the court must examine both the claims presented and the showing in support of class certification for their adherence to the requirements of Rule 23.

836 F.2d at 578.

In summary, although the Court must ascertain the relevant issues involved and come

---

**9.** Defendants urge the Court to, "probe behind the pleadings," *Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, and "conduct a rigorous analysis to examine and understand the relevant industry in making a Rule 23 determination," *Domestic Air,* 137 F.R.D. at 685 n. 10. The Defendants seem to argue that the Court should resolve factual discrepancies before determining whether proceeding as a class is appropriate. Although Defendants are correct in asserting that "class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' " *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351(1978) (quoting *Mercantile Nat. Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963)),

the Court finds that an investigation into the merits of the case at this time would run afoul of *Eisen.* *See* 417 U.S. 156, 177–78, 94 S.Ct. 2140. The Court notes the recent cases cited by defendants (e.g. *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 259 F.3d 154 (3rd Cir. 2001), *Szabo v. Bridgeport Machs. Inc.,* 249 F.3d 672 (7th Cir.2001)) which question the continuing vitality of *Eisen* by suggesting that courts should make whatever legal and factual inquiries are necessary under Rule 23. This circuit, however, has not taken that step. *See Curtin v. United Airlines, Inc.,* 275 F.3d 88, 92 (D.C.Cir. Dec.28, 2001) (citing the holding and the relevant dicta in *Eisen* as prohibiting a preliminary inquiry into the merits at the class certification stage).

to a full understanding of the facts as they relate to the Rule 23 requirements, at this time it would be improper for the Court to conduct a preliminary investigation into the merits of the case to decide whether plaintiffs have satisfied their burden in establishing the existence of a class.

## III. Class Certification in Antitrust Actions

The treble damages provision of the Clayton Act, 15 U.S.C. § 15, was designed to encourage private enforcement of the antitrust laws by offering generous recompense to those harmed by the proscribed conduct and simultaneously to erect a deterrent to those contemplating similar conduct in the future. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262, 92 S.Ct. 885. Moreover, it has long been recognized that class actions play an important role in the private enforcement of antitrust actions. *See id.; see also Brown v. Pro Football Inc.*, 146 F.R.D. 1, 4 (D.D.C. 1992) ("the framers of Rule 23 seemed to target such cases as this [antitrust action] as appropriate for class determination"); *In re Plastic Cutlery Antitrust Litig.*, No 96–CV– 728, 1998 WL 135703, at *2 (E.D.Pa. 1998)("Class actions are widely-recognized as being particularly appropriate for the litigation of antitrust cases alleging a price-fixing conspiracy. . . ."); *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 238 (E.D.N.Y.1998) ("[a]ntitrust claims are well suited for class actions"); *see also Shelter Realty*, 75 F.R.D. at 38 ("The class action device is well-suited to afford the desired access."). Further, courts tend to favor class certification when in doubt. *See Playmobil*, 35 F.Supp.2d at

239 (citing *In re Control Data Corp. Sec. Litig.*, 116 F.R.D. 216, 219 (D.Minn.1986)) ("Because of the important role that class actions play in the private enforcement of antitrust actions, courts resolve doubts in favor of certifying the class."); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.1985) ("The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.").

## IV. Analysis [10]

This analysis focuses on the requirements of Rule 23 for the maintenance of a class action. This is a procedural ruling and as such the Court expresses no opinion on the merits of the case. In addition, the Court will consider amending this decision pursuant to Rule 23(c) should developments in the case warrant such action. This may include the creation of subclasses and could even include decertifying the classes should it become clear that certification was not proper.[11]

### A. Rule 23(a) Requirements

#### 1. Numerosity

■ The first prerequisite for certification is that the class be so large that joinder of all class members would be impracticable. Fed. R.Civ.P. 23(a)(1). There is no set number requirement as long as plaintiffs provide a reasonable basis for their estimate. *See Lorazepam*, 202 F.R.D. at 26; *Kifafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C.1999)("So long as plaintiffs provide a reasonable basis for the estimate provided,

**10.** As a preliminary matter, the Court will briefly address the Niacin defendants standing argument. *See In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 504–05 (S.D.N.Y. 1996) ("Standing to sue is an essential threshold which must be crossed before any determination as to class representation under Rule 23 can be made."). Defendants argue that the named plaintiffs lack standing to sue because they lack a personal stake in the outcome of the controversy. *See* Niacin Mem. at 18 –19. Essentially, the Niacin defendants conflate this argument with their argument that the named representatives are not adequate because they did not purchase all of the vitamins products involved. While this will be more thoroughly addressed below with respect to the adequacy prerequisite, the Court is not persuaded that this fact establishes that the

named plaintiffs lack standing. Defendants have offered virtually no support for this argument. On the record before the Court, the plaintiffs' proposed classes of direct purchasers have standing to sue.

**11.** Rule 23(c)(1) provides, in pertinent part, "An order under this subdivision may . . . be altered or amended before the decision on the merits." Rule 23(c)(4) states: "When appropriate . . . a class may be subdivided into subclasses. . . ." Fed.R.Civ.P. 23. While the defendants have argued that subclasses rather than certifying the proposed classes, the Court is convinced that certifying the classes as proposed is proper at this time.

the numerosity requirement can be satisfied without precise numbers."); *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D.D.C.1998) ("Mere conjecture, without more, is insufficient to establish numerosity, but plaintiffs do not have to provide an exact number of putative class members in order to satisfy the numerosity requirement."). Further, courts often take the geographical location of the proposed class members into consideration when deciding whether or not certification is appropriate. *See Vargas v. Meese*, 119 F.R.D. 291, 293 (D.D.C.1987) ("Not only is size a factor in determining whether joinder is impracticable, the geographical dispersion of class members has also been found to be a factor presenting an obstacle to joinder."); *see also Pigford*, 182 F.R.D. at 348 ("That [geographical dispersion] alone is sufficient to establish numerosity, especially where the class members are located in different states.").

Plaintiffs have not given a precise number of class members at this stage but allege the total number of class members will be in the "hundreds" or "thousands," and, that members are geographically dispersed. Pls. Mem. at 10; Pls. Reply at 75. Defendants do not dispute that this requirement is met with respect to the alleged overall vitamins product class, however, certain defendants argue there are too few purchasers of particular vitamins (niacin and biotin) to meet the numerosity requirement. Niacin Mem. at 22; Joint Mem. at 3. However, defendants' argument is misplaced as plaintiffs are not attempting to certify individual vitamins and individual vitamin products classes. Rather, plaintiffs' complaints allege two conspiracies; one consisting of various vitamins and vitamins products, and one consisting of choline chloride. It is clear that the two proposed classes more than meet the numerosity requirement of Rule 23(a) as proposed class members are likely to number in the hundreds.

### 2. Commonality

█ Rule 23(a)(2) requires that there are questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 198, (D.D.C.2000) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997)). The commonality requirement is often easily met. *See Walsh*, 130 F.R.D. 260, 268 (noting that courts have found that the commonality threshold is not high).

Plaintiffs argue that their antitrust claims involve several legal and factual issues which are common to the putative classes. Specifically, plaintiffs identify the following issues that they claim are common to each member of the proposed classes: (a) whether defendants and co-conspirators combined, agreed, and conspired among themselves to fix, maintain, or stabilize prices of, and allocate markets for the vitamins, vitamin premixes and other bulk vitamin products which are the subject of the Complaints; (b) the existence and duration of the horizontal agreements alleged in the Complaints; (c) whether the defendants named in the Complaints were members of, or participants in the contract, combination and/or conspiracy alleged therein; (d) whether the defendants and co-conspirators took steps to conceal their conspiracy from plaintiffs and class members; (e) whether and to what extent the horizontal conspiracy alleged in the Complaints caused injury to the business or property of plaintiffs and the plaintiff classes, and the appropriate measure of damages; (f) whether agents, officers or employees of defendants and co-conspirators participated in telephone calls, meetings and other communications in furtherance of the conspiracies alleged in the Complaints; and (g) whether plaintiffs and members of the classes sought are entitled to declaratory or injunctive relief. *See* Pls. Mem. at 12–13. Similar issues have been found to satisfy the commonality requirement in other antitrust cases. *See, e.g., Lorazepam*, 202 F.R.D. at 27; *In re Ampicillin Antitrust Litig.*, 55 F.R.D. 269, 273 (D.D.C. 1972); *NASDAQ*, 169 F.R.D. at 510.

Further, in deciding to transfer this litigation to the Court, the Judicial Panel on Multidistrict Litigation found that the actions present common issues of fact. *See Order In*

re *Vitamins Antitrust Litig.*, MDL—1285 (J.P.M.L.1999) Defendants do not really dispute that plaintiffs have met their burden with regard to this requirement. The Court, therefore, has no trouble finding that this requirement has been met. However, the plaintiffs will still be required to establish that the common issues predominate in this litigation. The Court will address this issue in considering the predominance requirement of Rule 23(b).

### 3. Typicality

■ The third prerequisite requires finding that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The purpose of this requirement is to ensure "that the class representatives have suffered injuries in the same general fashion as absent class members." *Thomas v. Albright*, 139 F.3d 227, 236 (D.C.Cir.1998). Further, "[a]s with the requirement of commonality, the facts and claims of each class member do not have to be identical to support a finding of typicality." *Id.* at 236. The typicality and commonality requirements tend to merge. As described in *Falcon:*

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

457 U.S. at 158, n. 13, 102 S.Ct. 2364.

The typicality requirement is satisfied " 'if each class member's claim arises from the same course of events that led to the claims of the representatives parties and each class member makes similar legal arguments to prove the defendant's liability.' " *See Lorazepam*, 202 F.R.D. at 27 (quoting *Pigford*, 182 F.R.D. at 349). Moreover, this requirement has been liberally construed by courts. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D.Ill.1992); *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D.Fla.1996). Specifi-

cally in the antitrust context, typicality "will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *Playmobil*, 35 F.Supp.2d 231, 241.

As described above, the Vitamins Complaint and the Choline Chloride Complaint describe claims of all class members arising from the defendants' alleged illegal activities concerning fixing prices and market allocation. Plaintiffs argue the allegations of a price fixing conspiracy and market allocation across vitamin product lines in the vitamins products class and of price fixing in the choline chloride class rest on the same legal theories and allegedly arise out of the same respective courses of conduct by the defendants. Certain defendants contend that the plaintiffs have not met the typicality requirement because the putative class would be an amalgam of "diverse businesses, facing different competitive environments and paying widely different prices." Niacin Mem. at 31. Defendants argue that the proffered representatives would not have the incentive to prove all of the elements of their claims because the class is "over broad and comprised of multiple conspiracies." *Id.* Further, class claims would "differ greatly in terms of products purchased, the defendants from whom they purchased, and the differing scopes and duration of conspiracies." *Id.* Defendants point out, as an example, that "named plaintiff Midwestern Pet has never purchased any niacin from any of the Naicin Defendants." *Id.*

The Court agrees with the plaintiffs. The plaintiffs claims stem from the defendant's unlawful price-fixing conspiracies with respect to choline chloride and vitamin products—this theory of an overarching conspiracy to fix prices and allocate the market in violation of antitrust laws will be common to all class members. *See In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 480. ("The overarching scheme is the linchpin ... regardless of the product purchased, the market involved or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the

cause of action arises from a common wrong."). The typicality requirement does not mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members. *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 (D.Minn.1995) ("Nor will differing damages, resulting from varied methods of procuring and purchasing the product, defeat satisfaction of Rule 23(a)(3)."). As one court stated:

> [T]here is nothing in Rule 23(a)(3) which requires the named plaintiffs to be clones of each other or clones of other class members. The diversity of named plaintiffs who differ in their methods of operation and conduct is often cited by defendants as an impediment to class certification. However, as long as the substance of the claim is the same as it would be for other class members, then the claims of the named plaintiffs are not atypical.

*In re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1036 (N.D.Miss.1993). The Court concludes that the factual circumstances and legal claims of the named plaintiffs are sufficiently typical of the absent class members. The typicality requirement, therefore, is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) calls for the representative parties to "fairly and adequately protect the interest of the class." Fed.R.Civ.P. 23(a)(4). This Circuit has held that "[t]he final element of Rule 23(a) necessitates an inquiry into the adequacy of representation, including the quality of class counsel, any disparity of interest between class representatives and members of the class, communication between class counsel and the class and the overall context of the litigation." *Pigford*, 182 F.R.D. at 350 (citing *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir.1997)).

Parties do not dispute the quality of class counsel—they are experienced antitrust lawyers who have shown that they are willing and able to vigorously pursue this case. Defendants do argue, however, that the class representatives will inadequately represent the absentee class members due to antagonistic interests. Specifically, certain defendants argue: (1) that plaintiffs "shuffling" of the named class representatives is proof of the inadequacy of the representation because representatives of certain products have dropped out; (2) that the named representatives did not purchase every vitamin effected by the alleged conspiracy from every defendant; and, (3) that the named representatives are not "conscientious representative[s]" as they have not shouldered their normal burdens incident to this litigation. *See* Merck Mem. at 15–16; Niacin Mem. at 32–33. The Choline Chloride defendants argue that unique defenses and conflicts, as well as, class representatives' lack of familiarity with the case and willingness to control litigation preclude a finding of adequacy. Choline Chloride Mem. at 35–38.

The plaintiffs have offered the following named class representatives of the Vitamin Products Class: Animal Science Products, Inc.; Midwestern Pet Foods, Inc.; Shaklee Corp.; Donaldson & Hasenbein, Inc. t/a J & R Feeds; Central Connecticut Cooperative Farmers' Association, Pilgrim's Pride Corp.; United Cooperative Farmers; and, Allied Feed, Inc.[12] The plaintiffs have offered three named class representatives in the Choline Chloride Complaint: Animal Science Products, Inc., Midwestern Pet Foods, Inc., and Pilgrim's Pride Corp. The Court finds that the plaintiffs have vigorously pursued this lawsuit to date which has already yielded substantial benefits for all class members. Plaintiffs have shown that the proffered representatives possess a sufficient knowledge of the nature and scope of the claims asserted by the plaintiffs and the class. *See* Pls. Reply at 61–65.

**12.** The Vitamins Complaint (Second Consolidated Amended Class Action Complaint, filed June 1, 2000) lists 16 additional plaintiffs. However, plaintiffs moved to dismiss the following plaintiffs: AG Mark, Inc., Dad's Products Co., Inc., Freeman Industries L.L.C., Hi–Tek Rations, J. Crookshank, T. Crookshank, A. Kardoes, O. Kardoes, Lakeland Cash Feed Co., Livengood Feeds, Inc., McDuffy Feed & Supply, Inc., Nature's Value, Inc., Nutritional Specialists, Wright Enrichment, Inc., Seltzer Chemicals, Inc., 1700 Pharmacy Corporation, JBDL Corporation, and, Horizon Laboratories, Inc. This motion was granted in an Order dated December 19, 2000.

■ Furthermore, as to the vitamin products class, plaintiffs have alleged that defendants have participated in a unitary overarching conspiracy which encompassed a number of identified vitamins. As alleged co-conspirators, defendants are joint and severally liable to each and every class member for damages sustained on all class members' purchases of all vitamin products encompassed by the conspiracy class plaintiffs have alleged. It is irrelevant to this prerequisite that the representatives have not purchased all products because their incentive to produce evidence as to the entire conspiracy will be the same. *See Linerboard*, 203 F.R.D. at 208 n. 8 (" 'The fact that the purchases were not made from all the defendants, or that all the methods through which the conspiracy was allegedly effected were not utilized against the named plaintiffs is not dispositive of their ability to represent the class.' " quoting *Potash*, 159 F.R.D. at 691). Defendants arguments to the contrary are not persuasive.

Class representatives are not required to have detailed understanding of the nature and facts of their case, rather they must be willing and able "to vigorously prosecute the interests of the class through qualified counsel." *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 179 U.S.App. D.C. 154, 551 F.2d 340, 345 (D.C.Cir.1976), cert. denied, 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270. Plaintiffs have made a threshold showing that their proposed class representatives are willing and able to prosecute their case through experienced class counsel. Also, because the plaintiffs have alleged an overarching single conspiracy with respect to each class, all named plaintiffs will have the same incentive to the case as any absentee class member. This incentive is in no way diminished by the fact that named plaintiffs purchased only some of the various vitamin products or that the named representatives may have used different methods of purchase.

The Court finds that the plaintiffs have shown that the remaining class representatives in both the vitamins product class and the choline chloride class will adequately represent the absent class members. Plaintiffs have met their burden in establishing the requirements of Rule 23(a)(4).

## B. Rule 23(b)

Having established that the proposed classes meet the requirements of Rule 23(a), plaintiffs must also show that the requirements of Rule 23(b) are met. As previously stated, plaintiffs claim that their proposed classes fall under 23(b)(3), therefore, plaintiffs must show that common questions predominate over non-common questions and that class resolution is superior to other methods of adjudication. Fed.R.Civ.P. 23(b). Much of the Court's analysis in the predominance and superiority inquiry shall apply to the two proposed classes. However, individual concerns raised by certain defendants shall be addressed separately.

### 1. Predominance

■ The predominance inquiry implicates the commonality requirement of Rule 23(a)(2). *See Linerboard*, 203 F.R.D. at 209; *Stephenson v. Bell Atlantic Corp.*, 177 F.R.D. 279, 286 (D.N.J.1997). Thus, the common issues identified as sufficient under Rule 23(a) must be shown by the plaintiffs to predominate over the non-common issues— the common issues do not have to be shown to be dispositive. *See, e.g., Lorazepam*, 202 F.R.D. at 29; *Potash*, 159 F.R.D. at 693; *accord* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 ("[W]hen one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though important matters will have to be tried separately. Typically this situation arises in antitrust ... actions."). There is no definitive test for determining whether common issues predominate, however, in general, predominance is met "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Potash*, 159 F.R.D. at 693. Antitrust actions involving allegations of price-fixing have frequently held to predominate in the class certification

analysis. *See Lorazepam,* 202 F.R.D. at 30; *Potash,* 159 F.R.D. at 693; *In re Workers' Compensation,* 130 F.R.D. 99, 108 (D.Minn. 1990); *Ampicillin,* 55 F.R.D. at 276; *Stephenson,* 177 F.R.D. at 288–89; *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 428 (S.D.Tex.1999); *Lumco Indus., Inc. v. Jeld-Wen, Inc.,* 171 F.R.D. 168, 173 (E.D.Pa.1997).

As previously noted, the predominance inquiry also requires the identification of the elements of the substantive law at issue. Here, plaintiffs will have to show that the evidence they propose to employ with respect to proving the defendants' civil antitrust liability is common to the class as a whole. *See Domestic Air,* 137 F.R.D. at 684. Plaintiffs will have to prove (1) that there was a conspiracy to fix prices in violation of antitrust law; (2) that prices were fixed pursuant thereto; and, (3) that plaintiffs purchased products, which as a result of the conspiracy, were higher than they should have been. *Id.*

Parties vigorously debate whether the plaintiffs have met the predominance requirement. Plaintiffs argue that predominance is satisfied because they have alleged a horizontal price-fixing conspiracy and in such cases the common issues of law or fact necessarily predominate. According to the plaintiffs, the overriding issues are whether a price-fixing conspiracy exists, and the parameters and effect of the conspiracy—the plaintiffs contend these issues are common. *See* Pls. Mem. at 18—19. Further, plaintiffs maintain they will offer proof of: (1) the existence of the conspiracy, including scope and duration, by offering class-wide evidence of what defendants and their co-conspirators said and did; (2) the defendants' fraudulent concealment of the conspiracy; and, (3) the conspiracy's impact on prices paid by class members, including measure of damages, by offering the analysis of plaintiffs' expert economist. Pls. Reply at 2. Plaintiffs also suggest that courts have held, as a "general rule," that successful price-conspiracies invariably injure purchasers and that some courts recognize this as a presumption. Pls. Reply at 23 (citing *In re Master Key Anti-*

trust Litig., 528 F.2d 5, 12 n. 11 (2d Cir. 1975); *In re Auction Houses Antitrust Litig.,* 193 F.R.D. 162, 166 (S.D.N.Y.2000)). Even if the Court does not recognize this presumption, the plaintiffs argue, they will present sufficient generalized proof concerning the alleged conspiracy, antitrust injury, and damages.

Defendants argue that certifying the proposed classes would not be proper under Rule 23(b)(3) because individual issues would in fact predominate over class issues where, as here, class members purchased widely different products in completely unrelated markets. The proposed class, as characterized by the defendants, is too sprawling and diverse.[13] Specifically, the vitamins defendants argue that non-common issues will predominate because plaintiffs' proposed class encompasses separate and independent conspiracies. *See* Merck Mem. at 16.; Niacin Mem. at 22–24. Defendants point out that each of the vitamins products differ in the following ways: manufacturing process; use as end products (i.e., not interchangeable or substitutable); price; pool of manufacturers; pool of purchasers; and, alleged time period of the particular conspiracy. *See* Merck Mem. at 18. Defendants further point out that plaintiffs may have purchased certain products at prices not shown to have been affected by the alleged conspiracy; that there were wide variations in methods of purchase and in prices actually paid; that defendants were not "competitors"; that the non-settling defendants only produced some, and not all, of the vitamins involved in the alleged vitamins conspiracy which precludes liability for such a vast conspiracy. As a result of these disparities, defendants argue that plaintiffs cannot offer common class-wide proof of a single conspiracy, of impact, or of damages, and, thus, individual issues will predominate.

The choline chloride defendants make essentially the same arguments to urge that plaintiffs have not met their burden with respect to predominance. They contend that

**13.** In fact, Degussa, Lonza, Reilly, and Nepra, the so-called Niacin defendants, concede that class action in this case would be appropriate on a more narrowly defined scale and concede and are willing to stipulate to a properly defined "Niacin Purchasers Class" for claims relating to the purchase of niacin and niacinamide. See Niacin Surreply at 2.

individual issues will predominate with respect to impact because: (1) there are differences in the manner and circumstances of each class members purchases of choline chloride; (2) prices of choline chloride varied significantly by formulation and from supplier to supplier; (3) impact was different in different years due to unique factors to certain time periods of the alleged conspiracy. *See* Choline Chloride Mem. at 11–27.

The Court is not convinced by defendants' arguments and finds that the plaintiffs have made the requisite showing that the common issues will predominate with respect to the existence of the overarching vitamins conspiracy and the choline chloride conspiracy. As the plaintiffs point out, the allegations of price-fixing relate to the *defendants' conduct*, therefore proof will not vary among the class members. The Court also finds that plaintiffs have offered a colorable method by which they intend to prove impact on a class wide basis. The issue of damages with respect to each class member may introduce many individual issues, however, this is not enough to defeat certification. If the circumstances that the defendants point to are true, with respect to the identified vitamins, premixes, and bulk vitamins, the defendants' arguments demonstrate merely that plaintiffs may be unable to prove all that they claim in a *determination on the merits*. Or, perhaps defendants' arguments point to the possibility that, as this litigation proceeds, the putative vitamins classes should be further divided into subclasses pursuant to Rule 23(c) as many of the issues relating to actual damages are in fact individualistic. Defendants' arguments, however, do not persuade the Court that non-common issues predominate. The Court will now turn to assessing the evidence as to *how* the class plaintiffs intend to show antitrust injury on a class-wide basis.

### a. Antitrust Violation—Conspiracy to Fix Prices

The Court finds that plaintiffs have made a threshold showing that the proof they intend to offer at trial as to the alleged vitamins conspiracy and choline chloride conspiracy will be common to the class and generalized. The alleged violations of a price fixing conspiracy and market allocation will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members. *See Lorazepam*, 202 F.R.D. at 29 ("As is true in many antitrust cases, the alleged violations of the antitrust laws at issue here respecting price-fixing and monopolization relate 'solely to Defendants' conduct, and as such proof for these issues will not vary among class members.' " citing *Potash*, 159 F.R.D. at 694); *Lumco*, 171 F.R.D. at 172 ("The fact-finder's focus of inquiry will be on the . . . Defendant's words and actions; it will not vary among individual class members. Several courts have held that when a defendant is alleged to have participated in a nationwide price-fixing conspiracy, impact will be presumed as a matter of law, and the predominance requirement of Fed. R. Civ. Pro. 23(b)(3) will be satisfied."); *Ampicillin*, 55 F.R.D. at 278 (finding that "the existence of a conspiratorial agreement among the defendants to lessen competition in and exclude competitors from the manufacture and sale of ampicillin and other semisynthetic penicillins, and to secure power over the price of these drugs, as well as the activities which carried out the alleged agreement and resulted in damage to the plaintiffs, are common items of proof which predominate over issues of damages peculiar to each claimant"); 4 H. Newberg & A. Conte, *Newberg on Class Actions* § 18.28 at 18–98 (3d ed. 1992) ("As a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions.").

The defendants base their arguments in this area on their characterization of the vitamins, vitamins premixes, and bulk vitamins markets as too complex, fragmented and diverse such that common issues cannot predominate. Courts have often rejected claims by defendants that the industry, pricing structure, products, and transactions with each other and with their customers are so complex, varied, fragmented, and diverse that common issues cannot predominate. In addition, courts have certified classes in the such cases. *See Domestic Air.*, 137 F.R.D. at 677; *Potash*, 159 F.R.D. 682; *In re Commercial Tissue Products*, 183 F.R.D. 589 (N.D.Fla.1998); *Lumco*, 171 F.R.D. 168; *In re Wirebound Boxes Antitrust Litig.*, 128

F.R.D. 268 (D.Minn.1989); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143 (E.D.Pa. 1979); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244 (S.D.Tex.1978).

Defendants vigorously argue that this line of cases should not be followed where, as in the instant case, the products are so diverse as to comprise many relevant antitrust markets. Defendants urge following a line of cases in which class certification was denied in horizontal price-fixing cases. *See, e.g., Blue Bird Body*, 573 F.2d at 328; *Windham v. American Brands, Inc.*, 565 F.2d 59, 67–68 (4th Cir.1977); *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D.Cal.1991).[14] The Court is not persuaded. The defendants' arguments are based on the assumption that there *could not* have been a single conspiracy. They claim there were multiple conspiracies, if any existed at all. The defendants improperly re-characterize the plaintiffs' allegations. The plaintiffs have not alleged multiple conspiracies—they have alleged a single price fixing conspiracy as to vitamins and as to choline chloride, and improper market allocation. As the Supreme Court stated: "[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts but only by looking at it as a whole." *Continental Ore Co. v. Union Carbide & Carbon Co.*, 370 U.S. 690, 699, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). "This principle should not be discarded in the context of a class determination. Defendants' liability to the potential class members is not to be determined by dismembering the conspiracy. . . ." *See In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 347–48 (E.D.Pa.1976). In the context of an appeal of the criminal conviction for violations of the Sherman Act § 1, the Seventh Circuit stated:

> That many of the conspirators did not know each other, had no direct contact with each other, and were not always interested in the same customers was probably as immaterial to the conspirators as it is to us now. . . . Because of the nature of this conspiracy, it could not reasonably be expected that any one conspirator would have full knowledge.

*United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 125, 127 (7th Cir.1978).

In this case, that there were only a few manufacturers of each vitamin and thus less competition in each market may in fact support, rather than refute, plaintiffs' contention of a single overarching conspiracy. The lack of competition may have been the direct result of the defendants' alleged agreement to eliminate competition. Therefore, the Court does not find defendants' argument as to product diversity convincing.[15]

The Court is satisfied that plaintiffs' allegations of a single overarching conspiracy with respect to vitamin products and choline chloride, the evidence of the guilty pleas,[16] and, the results of discovery to date, are sufficient to warrant a finding that plaintiffs have shown that they will introduce generalized evidence, common to the class, in attempting to prove the alleged conspiracy and that this will predominate.

### b. Impact

The Court finds that issues concerning antitrust impact are also common to the class

---

**14.** Defendants cite additional cases in their opposition brief. *See* (Merck Mem. at 12, nn. 11, 12.)

**15.** As this Court noted earlier in this litigation, "the inference to be drawn from the plaintiffs' allegations is that the lack of competition among defendants for particular products or particular geographic areas was the direct result of their agreement to eliminate such competition." Memorandum Opinion Re: Motions to Dismiss at 21 2000 WL 1475705 at *10 (May 9, 2000) [hereinafter, May 9, 2000 Op.] (citing *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir.1997)).

**16.** This Court has repeatedly rejected defendants' attempts to imply that the guilty pleas and class settlements to date suggest the existence of separate conspiracies rather than a single conspiracy as alleged. *See* 2000 WL 1475705, at *11 n. 13 ("It is perfectly acceptable for the government and plaintiffs to take different views of the scope of this conspiracy, even if plaintiffs refer to the government's documents to support their claims of the defendants' involvement in the alleged activities. Moreover, the Court has no evidence of the government's view of the scope of this conspiracy; the fact that the government chose to divide the conspiracy into separate parts does not in any way support the defendant's position that there could not have been a single overarching conspiracy.").

and predominate. The plaintiffs have made a sufficient showing that they intend to prove that the defendants' conspiracy to fix prices and to allocate the market for vitamin products and choline chloride led to artificially high prices causing antitrust injury. At the class certification stage, plaintiffs need only demonstrate that they intend to use generalized evidence which is common to the class and will predominate over individualized issues with respect to proving impact. It is not unprecedented that courts have found common impact in cases alleging price-fixing despite individual negotiations, varied purchase methods and different amounts, prices, and types of products purchased—as one court stated:

> As long as the existence of a conspiracy is the overriding question, then the class has met its predominance requirement .... To prove injury, plaintiffs need only demonstrate they have suffered some damage from the unlawful conspiracy .... Such a showing may be made on a class basis if the evidence demonstrates that the conspiracy succeeded in increasing prices above the competitive level.

*Workers' Compensation,* 130 F.R.D. at 109 (citations omitted); *accord In re Plywood Anti–Trust Litig.,* 76 F.R.D. 570, 584 (E.D.La.1976) ("[I]f the members of each of the classes prove they purchased softwood plywood during the relevant period and that defendants conspiratorially increased or stabilized plywood prices, then the trier of fact may conclude that the requisite fact of injury occurred. Therefore, the fact of injury issues do not give rise to a host of individual issues which destroys the requisite predominance of questions common to the classes."); *In re Flat Glass Antitrust Litig.,* 191 F.R.D. 472 at 486 (W.D.Pa.1999) ("More importantly, the proof plaintiffs must adduce to establish a conspiracy to fix prices, and that defendants base price was higher than it would have been absent the conspiracy, would be common to all class members. Therefore, even though some plaintiffs negotiated prices, if plaintiffs can establish that the base price from which these negotiations occurred was inflated this would establish at least the fact of damage, even if the extent of damage by each plaintiff varied.").

Some courts have found a presumption of common impact in cases involving allegations of horizontal price-fixing. *See, e.g., Master Key,* 528 F.2d 5, 12 n. 11 ("[I]f the appellees establish ... that the defendants engaged in an unlawful national conspiracy which had the effect of stabilizing prices above competitive levels, and further establish that the appellees were the consumers of the product, we would think that the jury could reasonably conclude that the appellants' conduct caused injury to each appellee"); *Auction Houses,* 193 F.R.D. 162, 166 (S.D.N.Y.2000) ("Price fixing conspiracies, at least to the extent they succeed in fixing prices, almost invariably injure everyone who purchases the relevant goods or services"). In this case, the Court does not have to rely on a presumption of common impact because the plaintiffs have established that their proof respecting impact or fact of injury will be common to all members of the class and will predominate over individual issues. The Court will now turn to the plaintiffs proof concerning common impact for each of the proposed classes.

### i. Choline Chloride

In this case, the plaintiffs' do not rely solely on the judicial presumption of common impact. The plaintiffs' economics expert, Dr. John Beyer, has detailed the approach that plaintiffs intend to take with respect to establishing common impact. Dr. Beyer offers that he analyzed the structure and characteristics of the choline chloride industry and the bulk vitamins industry. As to choline chloride, Dr. Beyer performed an economic and structural investigation of the choline chloride industry and found that there was product fungibility, a high degree of product and geographic overlap among defendant competitors, and that defendants possessed substantial market power. *See* Beyer Choline Chloride Decl. ¶¶ 6, 10–14. Based on this analysis, Dr. Beyer concluded that "in the absence of a conspiracy, defendants would have competed actively on the basis of price to all member." *Id.* at ¶ 36. Dr. Beyer also performed a separate analysis of the defendants' pricing structure by comparing prices during the class period with prices

before or after the conspiracy was alleged to have ended. *Id.* at ¶¶ 16–20. In addition, he used multiple regression analyses to evaluate common impact. *Id.* at ¶ 23.

Certain defendants argue that plaintiffs cannot prove impact on a class-wide basis due to the significant variance in pricing for each of the different formulations of choline chloride and by each supplier. Choline Chloride Mem. at 18. These defendants offer their own economics expert, Dr. Myslinski, who also analyzed the price trends using regression analysis. He concluded that there was a "systematic heterogeneity among suppliers" with regard to pricing. Myslinski Decl. at ¶ 22. Ultimately, defendants contend that the price trends, multiple suppliers and factors unique to various time periods preclude class-wide proof of impact.

The Court is convinced that plaintiffs have made a threshold showing that they intend to offer class-wide proof of impact in the Choline Chloride Class. The Court recognizes that there are significant differences as to the methods of analyses and conclusions offered by parties' experts, however, these differences are not appropriately settled at the class certification stage. These issues will be resolved by the fact finder. For now, the Court finds that Dr. Beyer's methodology is a valid one for proving antitrust impact common to the choline chloride class. For the purposes of class certification, plaintiffs must only show that they have identified a valid method for determining impact. The types of analyses used by Dr. Beyer, and proposed for use by plaintiffs in proving common impact, have been accepted by courts as sufficient to warrant a finding that impact can be shown through generalized proof common to the class. *See, e.g., Auction Houses,* 193 F.R.D. at 167; *Potash,* 159 F.R.D. at 696; *In re Magnetic Audiotape Antitrust Litig.,* 2001 WL 619305, 2001–1 Trade Cases P 73,306, 2001 WL 619305 (S.D.N.Y. Jun.1, 2001). The Court finds.

**ii. Vitamin Products**

Issues concerning antitrust impact are also common to the proposed vitamins products class and predominate over individual issues. While this is admittedly a closer issue due to the many vitamins and vitamin products involved, the Court is convinced, at this stage, that generalized evidence exists for attempting to prove antitrust impact and that the proposed analyses would be viable on a class-wide basis. Plaintiffs have made a showing that they intend to prove that the defendants' conspiracy succeeded in raising prices above the competitive level and that they purchased these vitamin products at those prices. Plaintiffs again offer the analysis of their expert Dr. Beyer. Dr. Beyer concluded that "[I]t is highly probable that all U.S. purchasers of bulk vitamins (including pre-mix) paid higher prices than they would have in the absence of the cartel." Beyer Bulk Vitamins Decl. ¶ 9. He based this on economic considerations which suggested cartel behavior, similarities in price behavior, and on an estimation of the actual impact using two methodologies—industry benchmark and multiple regression analysis. *Id.* He also made findings with respect to the structure and characteristics of the market.[17]

Defendants' contend that Dr. Beyer's methodologies show that individual issues necessarily predominate over common issues because any analysis must proceed on a vitamin by vitamin basis. Merck Surreply at 26–30. Further, defendants point to what they consider are contradictions in Dr. Beyer's own statements which refute his conclusions. *Id.* at 29. Defendants also offer their own experts, Drs. Litan and Myslinski, to refute the findings and conclusions of Dr. Beyer. In so doing, these experts make their own findings and conclusions.

The Court will not assess weight to be given to parties' experts at this stage. It is enough that plaintiffs have made a threshold showing of how they intend to prove impact using generalized evidence on a class wide

---

**17.** Dr. Beyer found (1) that defendants "enjoyed a high degree of market power;" (2) that "within vitamins products, each of the bulk vitamins subject to the alleged conspiracy is an undifferentiated, commodity-like product"; (3) there is a "high-degree of product and geographic overlap among defendants;" and (4) there are "significant barriers to entry." Beyer Bulk Vitamins Decl. at ¶¶ 9, 13.

basis. *See, e.g., In re Diamonds Antitrust Litig.*, 167 F.R.D. at 384 ("we need not consider [defendants' expert affidavit] in detail, as it is for the jury to evaluate conflicting evidence and determine the weight to give the experts' conclusions."); *Domestic Air*, 137 F.R.D. at 692 ("It is not the function of the court at this time to determine whether Dr. Beyer is correct. The weight of to be given and its effect is for the fact finder in assessing the merits of plaintiffs' claims at a later date."). The Court concludes that plaintiffs have made a sufficient showing that the evidence they intend to present concerning antitrust impact in both the choline chloride class and the vitamins class will be made using generalized proof common to the class and that these issues will predominate.

### c. Damages

The Court is also convinced that common damage issues will predominate despite the fact that there will likely be many individual issues with respect to the amount of damages to individual class members. At the certification stage, the preliminary inquiry in assessing the proposed methods of proving damages in limited: The inquiry is not whether the methods are valid, but is only to assess whether the methods are available to prove damages on a class-wide basis. In essence, the plaintiffs must show that there is a viable method by which to establish the "but-for" price as to the vitamins and vitamin products in the alleged conspiracy. Plaintiffs' expert, Dr. Beyer, has offered two viable methodologies by which it is possible to calculate damages on a class-wide basis—multiple regression analysis and industry benchmark analysis. Beyer Choline Chloride Decl. ¶¶ 37–39; Beyer Bulk Vitamins Decl. ¶¶ 55–61. These methods are not "so insubstantial and illusive as to amount to no

method at all." *Commercial Tissue*, 183 F.R.D. at 596. These proposed methods are sufficient to warrant a finding that common damage issues will predominate.

Moreover, many courts have held that individual issues with respect to the amount of damages incurred by class members will not defeat certification where common issues predominate with respect to the alleged antitrust conspiracy and impact. *See, e.g., Playmobil*, 35 F.Supp.2d at 246–47; *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y.1998) ("Factual differences in the amount of damages, date, size or manner of purchases ... will not defeat class action certification ...."). In this case too, the amount of damages can properly be determined using individualized proceedings should this become necessary if the plaintiffs can prove the alleged antitrust conspiracy and impact have been proven.

### d. Fraudulent Concealment

■ Defendants' argue that Plaintiffs' claims of fraudulent concealment present individualized issues of fact which preclude a finding of predominance. Plaintiffs' complaints allege that due to defendants' affirmative acts of fraudulent concealment, the statute of limitations should be extended to include acts committed beyond the four year limitation set forth in the Clayton Act, 15 U.S.C. § 15(b), for federal antitrust claims.[18] Plaintiffs contend that the fraudulent concealment claim will not preclude class certification because the elements of the claim will focus on the affirmative acts of concealment by the defendants and would be common to each class member.[19] Defendants disagree and maintain that individual issues with respect to class members' knowledge or due diligence will predominate. Specifically, defendants argue that certifying a class which

---

**18.** Since the initial complaint in this consolidated action (Donaldson & Hasenbein, d/b/a J & R Feed Services, Inc. v. F. Hoffman LaRoche, Ltd., Cas Number 1:98–CV–00762 (D.D.C.)) was filed on March 25, 1998, the period March 25, 1994 through March 25, 1998 falls within the four year limitations period set forth by 15 U.S.C. § 15(b).

**19.** As this Court noted previously in the present litigation, "In order to prevail on a claim for

fraudulent concealment under federal antitrust law, a plaintiff must plead with sufficient particularity (1) that the defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of due diligence." 2000 WL 1475705, at *2 (citing, *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C.Cir. 1994)).

includes periods allegedly tolled due to fraudulent concealment, would at some point necessitate individual discovery from each class member on the issue of their knowledge of the alleged conduct and their exercise of due diligence. *See* Merck Mem. at 57; Choline Chloride Mem. at 27–28.

Courts frequently find the issue of fraudulent concealment a common issue which predominates because the inquiry necessarily "focuses on defendants' conduct, that is, what the defendants did rather than what plaintiffs did." *Flat Glass,* 191 F.R.D. at 488; *accord Linerboard,* 203 F.R.D. at 222 ("The great majority of the cases on this point counsel the Court to conclude that common issues predominate over individual ones with respect to fraudulent concealment."); *Potash,* 159 F.R.D. at 699 ("The great weight of authority indicates that, absent exceptional circumstances, individual questions that arise in proving fraudulent concealment will not operate to prohibit certification in a class seeking certification to pursue a price-fixing conspiracy."); *see also* 1 *Newberg on Class Actions,* § 4.26 at 4–104 ("challenges based on ... fraudulent concealment ... have usually been rejected and will not bar predominance satisfaction because those issues go to the right of the class to recover, in contrast to underlying common issues of the defendant's liability"). Indeed, this Court has already recognized that "[c]oncealment is generally susceptible to industry-wide proof and need not be established on a victim-by-victim basis is in the context of a motion to dismiss." 2000 WL 1475705, *3.

Defendants seek to distinguish this line of cases and claim that, in this case, the focus should not be on the acts of the defendants, but on the plaintiffs' knowledge and exercise of due diligence. *See* Merck Mem. at 51–55. Further, defendants contend that document and deposition testimony obtained in discovery reveals that there are many individualized questions concerning when certain plaintiffs had specific knowledge.

Plaintiffs argue that documents and deposition testimony obtained in discovery to date support their contention that their claim of fraudulent concealment will be supported using common proof and will not depend upon

individual issues. Plaintiffs have alleged a number of actions taken by defendants to conceal their alleged conspiracies including: meeting in secret locations, using codes on documents to refer to co-conspirators, destroying documents, lying to law enforcement officials, and submission of false bids. In support of their contentions, plaintiffs have offered at least some evidence culled from discovery to date to support these claims.

The Court finds that, while individual issues concerning plaintiffs knowledge and diligence will certainly arise, these issues will not defeat class certification as the plaintiffs have made a sufficient showing that they intend to present common evidence as to defendants' affirmative acts of concealment. Further, individualized issues related to fraudulent concealment can be handled effectively during the damages phase should bifurcation become appropriate as these issues typically go to the right of class members to recover. To the extent defendants have uncovered evidence tending to refute plaintiffs claims of fraudulent concealment, they may, if they chose, use this in their attempts to show that plaintiffs have not met their burden on the merits. In finding that common issues with respect to defendants' alleged fraudulent concealment predominate over individualized issues, the Court again notes that Rule 23(b)(3) requires that common issues predominate; it does not require that common issues be dispositive.

The Court finds it unnecessary and possibly improper to submit to a more thorough examination of the underlying claims as they relate to fraudulent concealment at this time. In discussing the propriety of ruling on which statute of limitations to apply to the case, the Court in *Kifafi v. Hilton Hotels,* held that an inquiry into whether or not the plaintiffs met the requirements of a fraudulent concealment claim would "impermissibly intrude upon the merits of Mr. Kifafi's claim." *Hilton Hotels,* 189 F.R.D. at 178. The Court went on to note:

> An inquiry into the applicability of the statute of limitations in the context of a motion for class certification would run counter to this principle. The most obvious problem is that the existing record is

inconclusive as to which statute of limitations should apply. In addition, Mr. Kifafi has alleged that the statute of limitations was tolled because the Defendants fraudulently concealed their ERISA violations. The Defendants vigorously contest the sufficiency of these allegations, arguing that they do not satisfy the heightened pleading requirements applicable to claims of fraudulent concealment under ERISA. It is difficult to see how the Court could resolve any of these issues without reaching the merits of the class-wide claim.

*Id.*

The Court finds that the evidence presented by plaintiffs is adequate to support their allegations of fraudulent concealment at the class certification stage.

### 2. Superiority

■ The superiority requirement of Rule 23(b) is met when a court determines that a class action is superior to other available means of adjudication. It is appropriate in cases in which a class action would promote judicial efficiency and uniformity of decisions as to persons similarly situated. Fed. R.Civ.P. 23(b), advisory committee notes (1966). The Court has considered the defendants' arguments concerning (1) manageability given that numerous actions are already pending separately, see Niacin Mem. at 41–42 and Choline Chloride Mem. at 31; (2) the desire of some class members to control the prosecution of the case individually as numerous putative class members have indicated their interest in so doing by opting out of related settlements, see Niacin Mem. at 41–42 and Choline Chloride Mem. at 32; (3) the need for "mini-trials" with respect for impact and damages, see Choline Chloride Mem. at 30. The Court concludes that the class action is a superior device for litigating the plaintiffs' antitrust claims.

The defendants' arguments concerning manageability are premised on their assertion that antitrust injury in this case can only be determined on an individualized basis and would, therefore, at trial would require factual determinations on a "time-specific, product-specific, vendor-specific, and purchaser-specific" basis. As discussed above, the Court is satisfied that plaintiffs have established that common issues of antitrust impact will predominate over individual ones. This, therefore, will not create manageability problems. The Court has also addressed the issue of proving the amount of damages and the tools which are available for efficiently dealing with the issue when and if it arises. This too is not enough to defeat a finding that proceeding as a class action is superior in this case.

Defendants also argue that a class action is not superior because a large number of class members are likely to opt-out of the class and because many plaintiffs have large individual claims. This argument also fails. While there are a large number of so-called direct action plaintiffs participating individually, and all cases have been consolidated for pretrial purposes in this forum, the Court is at a loss to understand how adding additional individual actions, especially in view of a trial on the merits, will promote manageability. Moreover, there are a variety of tools available pursuant to Rule 23(d) and the Federal Rules which have been used, and, will continue to be used, in this case, as needs arise. The Court is confident that with the assistance of able attorneys on both sides, management issues will be successfully resolved. The Court is satisfied that a class action is superior in this case.

In summary, the Court finds that plaintiffs have met their burden with respect to establishing the requirements of predominance and superiority of 23(b)(3). The Court is satisfied that the interests of all parties can best be served by certifying the classes as proposed by the plaintiffs. However, the Court retains great discretion in managing class action proceedings. *See Potash* 159 F.R.D. at 700. Rule 23(c) specifically provides that a class certification may be "altered or amended before decision on the merits." Fed.R.Civ.P. Rule 23(c)(1). Thus, the Court will, in its discretion, alter or amend the certified classes as necessary if as this case develops, continuing class treatment is deemed inappropriate for the Court or the parties. *See id.*

## C. Additional Arguments

While the Court has addressed all of the relevant issues in its analysis of Rule 23(a) and 23(b) above, for the sake of thoroughness, the Court will now turn to an analysis of arguments peculiar to certain defendants.

### 1. Niacin Defendants Opposition to Plaintiffs' Motion

Defendants Degussa–Huls AF, Degussa–Huls Corporation, Lonza AG, Lonza Inc., Alusuisse–Lonza Group, Ltd. (n/k/a Alusuisse Group Ltd.), Reilly Industries, Inc., Reilly Chemicals, S.A. and Nepera, Inc. (collectively, the "Niacin Defendants") submitted a Memorandum in Opposition to Plaintiffs' Motion for Certification of a Vitamins Products Class. Defendants' Memorandum which incorporates the same arguments set forth above relating to Rule 23(a)'s "commonality", "typicality", and "adequacy" requirements, and Rule 23(b) "predominance" and "superiority" requirements. However, defendants further attempt to differentiate the niacin market from the other vitamins products by pointing out that not only did the prior settlement agreement exclude all niacin products, no defendants other than the niacin defendants have ever pled guilty to conspiring to fix the price of niacin.[20] In support of this contention the Niacin defendants include the report of Dr. Robert E. Litan, which includes the following declaration:

> [P]laintiffs cannot prove liability or show that each class member suffered an impact or damages on the basis of generalized proof. In particular, the products encompassed by the complaint do not constitute a relevant market for antitrust purposes, so they would not have been the focus of a single, overall vitamin products conspiracy. Instead, both economic theory and available evidence suggest that there were, if anything, several distinct conspiracies in the vitamins industry, and the facts alleged by plaintiffs do not suggest otherwise. As a result, the plaintiffs' alleged class is far too broad in product scope and class members to accommodate common or generalized proof of liability or injury. The breadth of plaintiffs' claims will also preclude a formulaic approach to damages.

Litan Report at 3. In fact, in their surreply, the Niacin Defendants go so far as to concede that a "properly circumscribed 'Niacin Purchasers Class' would be an appropriate vehicle to pursue the Class Plaintiffs' claims relating to niacin and niacinamide." Niacin Surreply at 2.

The Court finds their arguments no different than those set forth by the other defendants and thus equally as unpersuasive. Plaintiffs have alleged a vast conspiracy transcending vitamin product lines and niacin is one of the vitamins set forth in the complaint. The Court finds that on the record before the Court, plaintiffs have met their burden in establishing the requirements of Rule 23 to proceed as a class action. The Niacin defendants, therefore, should be included as part of the vitamin products class as defined by plaintiffs for the same reasons that are set forth above.

### 2. Biotin Defendants Opposition to Plaintiffs' Motion

Sumitomo Chemical America, Inc. ("SCA") and Tanabe U.S.A., Inc. ("Tanabe U.S.A.") jointly submitted a Memorandum in Opposition to Plaintiffs' Motion for Certification of a Vitamins Products Class asking that the Court deny class certification, or designate subclasses. They further ask that if their request is denied and class certification is granted, that the Court have the various defendants and the Department of Justice show that no defendant has pled guilty to fixing the price of biotin.

Defendants maintain that the only class vitamin that SCA has ever sold is biotin.[21] SCA asserts that it did not start selling

---

**20.** The Court notes that at the time of the first settlement in this case there were three pending complaints—one for a Vitamins Product Class, one for a Choline Chloride Class, and one for a Niacin Class. The Niacin defendants became part of the non-settling defendants and thus subject to this instant motion for certification of a

Bulk Vitamins Class only after plaintiffs were granted leave to file a Second Consolidated Amended Class Action Complaint.

**21.** See Wakabayashi Decl. ¶ 5.

biotin until 1996,[22] which it claims was well after the proposed class period. However, SCA makes this assertion based upon the class period as set forth in defendant Merck's Opposition at 2–3 which refers to the class period as defined for the previous class settlement.[23] Since the definition for the currently proposed Vitamin Products Class lists a different relevant time period than the one set forth in the prior class settlement, sales of biotin made by SCA would in fact fall under the time period as defined in the proposed class certification request.[24]

The main argument set forth by SCA and Tanabe U.S.A. is that because they made most of their sales indirectly, plaintiffs' claims would be barred under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). These defendants further claim that even if plaintiffs had alleged a vertical conspiracy, which they have not, plaintiffs would not be able to avoid the *Illinois Brick* restriction. This argument seems irrelevant and misplaced since plaintiffs are not alleging a vertical conspiracy, nor are they pursuing claims related to indirect purchases. Thus, class plaintiffs with direct purchases from defendants that fall within the proposed time period qualify for the proposed class under the current definition for the class as set forth by plaintiffs.

Additionally defendants assert that if the Court divides the vitamins product class into subclasses, the resulting biotin subclass would fail the numerosity requirement of Rule 23(a). Plaintiffs counter this argument by pointing out that the complaint alleges one overarching conspiracy that does not differentiate among different vitamins products. The Court agrees with the plaintiffs. Thus, under plaintiffs allegations of a multi-vitamin conspiracy, the numerosity requirement is not measured in terms of individual products, but rather on a broad multi-vitamin basis.

Defendants' final argument is that class plaintiffs' lack standing to sue because SCA did not sell biotin or any other class vitamin before 1996.[25] This argument can also be dismissed. The proposed class period in this claim is defined as running from January 1, 1990 through September 30, 1998. Although there may not have been many, there were some direct purchases made by class members from defendants during that period. Thus, defendants' argument urging lack of standing must fail, and the reasoning set forth in the opinion above also applies to the Biotin defendants.

### V. Conclusion

For the foregoing reasons, the Court will grant plaintiffs' Motions for Class Certification and will certify the classes as proposed by the plaintiffs.

---

**22.** See Wakabayashi Decl. ¶ 7. Defendants also note that Tanabe U.S.A. is only alleged to have sold biotin and that Tanabe Seiyaku did not sell any vitamins in the United States from January 1, 1990 to the present. See Ujino Decl. ¶ 3.

**23.** The Merck Opposition Memo on p. 2–3 refers to the Class Notice and Claim Form and opt-out instructions sent to direct purchasers with respect to the previous class settlement. See Walker Aff. Ex. 1.

**24.** The definition for the proposed vitamins product class in this case sets the time period from January 1, 1990 to September 30, 1998. See Plaintiffs' Consolidated Reply p. 3, n. 2.

**25.** Defendants do not mention Tanabe U.S.A. when making this argument, presumably because it is obvious that they have made direct sales to class members during the time period set forth in the proposed class certification.